**EXHIBIT 1**

**Bidding Procedures Order**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| F & H ACQUISITION CORP., et al.,[1] | Case No. 13-13220 (____) |
| Debtors. | Jointly Administered |
| | Ref. Docket No. _____ |

## ORDER (1) APPROVING BID AND SALE PROCEDURES, (2) AUTHORIZING THE DEBTORS TO PROVIDE CERTAIN BID PROTECTIONS WITHOUT FURTHER ORDER OF THE COURT, (3) APPROVING ASSUMPTION, ASSIGNMENT AND SALE  PROCEDURES AND RELATED NOTICES, (4) SCHEDULING THE SALE HEARING, AND (5) GRANTING RELATED RELIEF

The Court having considered the *Debtors' Motion Requesting (A) the Scheduling of an Auction and Sale Hearing in Connection with the Sale of the Debtors' Assets, (B) Approval of Bidding Procedures for Such Assets, (C) Authorizing the Debtors to Provide Certain Bid Protections Without Further Order of the Court, (D) Approval of the Form and Scope of Notice of Auction and Sale Hearing, (E) Approval of Procedures for the Assumption, Assignment and Sale of Contracts and Leases to the Purchaser, and (F) Approval of Sale of the Debtors' Assets*

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: F & H Acquisition Corp. (2666); 505 Entertainment, Ltd. (4594); Alabama Fox & Hound, Inc. (5894); Bryant Beverage Corporation (0639); Champps Entertainment, Inc. (0491); Champps Entertainment of Texas, Inc. (7242); Champps of Maryland (1010); Champps Operating Corporation (5130); Downtown Beverage Corp. (3943); F & H of Iowa, Inc. (2434); F & H of Kennesaw, Inc. (5997); F & H Restaurant Corp. (8349); F & H Restaurant of Georgia, Inc. (2200); F & H Restaurant of Texas, Inc. (9871); Fox & Hound of Arizona, Inc. (3585); Fox & Hound of Colorado, Inc. (7166); Fox & Hound of Illinois, Inc. (3003); Fox & Hound of Indiana, Inc. (5676); Fox & Hound of Kansas, Inc. (7699); Fox & Hound of Kentucky, Inc. (0777); Fox & Hound of Littleton, Inc. (2894); Fox & Hound of Louisiana, Inc. (0477); Fox & Hound of Maryland, Inc. (7608); Fox & Hound of Nebraska, Inc. (5786); Fox & Hound of New Jersey, Inc. (0951); Fox & Hound of New Mexico, Inc. (5620); Fox & Hound of Ohio, Inc. (3963); Fox & Hound of Oklahoma, Inc. (2928); Fox & Hound of Texas, Inc. (0979); Fox & Hound Restaurant Group (6614); Fox & Hound, Inc. (9035); Fox & Hound II, Inc. (9540); Fuqua Beverage Corp. (4906); Jackson Beverage Corporation (3948); N. Collins Entertainment, Ltd. (4596); Raider Beverage Corporation (4993); Rocket Beverage Corporation (9829); Shenandoah Beverage Corporation (8087); Tent Finance, Inc. (5335); Tent Restaurant Operations, Inc. (5556); Willowbrook Beverage Corp. (1601); Winston-Salem Fox & Hound, Inc. (8319).  The location of the Debtors' corporate headquarters and the Debtors' service address is: 1551 N. Waterfront Pkwy, Suite 310, Wichita, KS 67206).

*to Purchaser Free and Clear of Liens, Claims and Interests* (the "Motion")[2] filed by F&H

Acquisition Corp. and its affiliated debtors and debtors in possession in the above-captioned

cases (collectively, the "Debtors"), any responsive pleadings filed in connection with the Motion,

the record in the above-captioned cases, and the representations of counsel at the hearing on the

Motion held on January [ ], 2014 (the "Hearing"); and the Court having determined that notice

of the Motion was adequate and sufficient; and after due deliberation and sufficient cause

appearing therefor;

### IT IS HEREBY FOUND AND DETERMINED THAT:

A.      The Court has jurisdiction over this matter and over the property of the Debtors

and their respective bankruptcy estates pursuant to 28 U.S.C. §§ 157(a) and 1334.  This matter is

a core proceeding pursuant to 28 U.S.C. § 157(b)(1)(A), (M), (N), and (O).  The statutory

predicates for the relief sought herein are 11 U.S.C. §§ 105, 363, 364, 365 and Fed. R. Bankr. P.

2002, 6004, 6006, 9008, 9014 and 9019.  Venue of these cases and the Motion is proper pursuant

to 28 U.S.C. §§ 1408 and 1409.

B.      The relief granted herein is in the best interests of the Debtors, their estates, their

stakeholders, and other parties in interest.

C.      The notice of the Motion and the Hearing given by the Debtors constitutes due

and sufficient notice thereof.

D.      The Debtors have articulated good and sufficient reasons for the Court to (i)

approve the dates, deadlines and procedures set forth herein in respect of the sale of substantially

all of the Debtors' assets (the "Bid Procedures"), (ii) authorize the Debtors to provide certain bid

protections without further order the Court, (iii) approve the form and manner of notice of the

---

[2]  Capitalized terms not otherwise defined in this Order shall have the meanings ascribed to them in the Motion or Asset Purchase Agreement (as defined below).

Motion, the Auction, the Sale Hearing, and the assumption, assignment and sale of certain of the Debtors' contracts and leases, and (iv) set the date of the Auction and the Sale Hearing.

E.      The Break-Up Fee (as defined below), shall be paid, if applicable, in accordance with the Stalking Horse Purchase Agreement (as defined below) and, if triggered, shall be deemed (i) an actual and necessary cost and expense of preserving the Debtors' estates, (ii) of substantial benefit to the Debtors' estates, (iii) reasonable and appropriate under the circumstances, (iii) the sale and the efforts that have been or will be expended by the stalking horse bidder selected by the Debtors, if any (the "Stalking Horse Bidder") notwithstanding that the proposed sale is subject to higher and better offers for the Debtors' assets, (iv) negotiated by the parties and their respective advisors at arm's length and in good faith, (v) necessary to ensure that any Stalking Horse Bidder will continue to pursue the proposed acquisition of the Debtors' assets and (v) facilitate the Auction and the submission of other bids.

F.      The Bid Procedures are reasonable and appropriate and represent a fair and appropriate method for maximizing the realizable value of the Debtors' assets.

**THEREFORE, IT IS ORDERED, ADJUDGED AND DECREED THAT**:

1.      The Motion is GRANTED.

2.      Any objections filed in response to the Motion and the relief granted herein, to the extent not resolved as set forth herein or at the Hearing, are hereby overruled.

3.      The Debtors, in consultation with their investment banker, shall contact parties the Debtors reasonably believe may potentially be willing, qualified and financially able to consummate a Sale Transaction. The Debtors may distribute an information package to any such parties with materials the Debtors deem appropriate under the circumstances including, but not limited to, preliminary "teaser" information.

4.     Upon execution of a non-disclosure agreement in favor of the Debtors by any person identified by the Debtors, with the assistance of their financial advisors, as reasonably likely to be a Qualified Bidder (as defined below) that wishes to conduct due diligence on the Debtors or their assets with respect to a potential bid may be granted access to due diligence information. For any person who is a competitor of the Debtors or is affiliated with any competitor of the Debtors, the Debtors reserve the right to withhold or limit any diligence materials that the Debtors, in their discretion after consultation with the DIP Agent, the First Lien Agent, and the Second Lien Agent determine are business-sensitive or otherwise not appropriate for disclosure to such person.

5.     The Debtors are authorized to select a Stalking Horse Bidder, after consultation with the Secured Lenders (as defined below).  Upon selecting a Stalking Horse Bidder, the Debtors shall, no more than two business days following execution of the Stalking Horse Purchase Agreement, file with the Court and serve notice of their selected Stalking Horse Bidder, together with a copy of the Stalking Horse Purchase Agreement.  If the Debtors select a Stalking Horse Bidder, the "break-up fee" of an amount up to 3% of the total purchase price offered and reimbursement of all reasonable out of pocket expenses of the Stalking Horse Bidder (collectively, the "Break-Up Fee") are hereby approved and authorized as actual and necessary expenses of the Debtors' estates pursuant to section 503(b) of the Bankruptcy Code; provided that, notwithstanding such authorization, the Debtors shall obtain the consent of the DIP Agent and First Lien Agent before agreeing to the Break-Up Fee with a Stalking Horse Bidder.  The Debtors' obligation to pay the Break-Up Fee, if any, shall be solely as provided in the asset purchase agreement executed by the Debtors and the Stalking Horse Bidder (the "Stalking Horse Purchase Agreement").

6.     Any prospective bidder, other than the Stalking Horse Bidder if selected (each a "Potential Bidder"), that wishes to participate in the bidding process for the Debtors' assets must, no later than February 25, 2014 (i.e., six days prior to the Auction) at 5:00 p.m. (prevailing Eastern Time) (the "Bid Deadline"):

a.     Submit to the Debtors, the official committee of unsecured creditors appointed in these chapter 11 cases (the "Committee"), and (i) the DIP Agent, (ii) the First Lien Agent and (iii) the Second Lien Agent ((i), (ii) and (iii) collectively, the "Secured Lenders"), through their respective counsel, an offer in the form of an executed asset purchase agreement (including all exhibits and schedules thereto) (the "Modified Agreement") without financing or due diligence contingencies (unless consented to by the First Lien Agent, DIP Agent, and, if the Second Lien Agent or its designee has not submitted a bid that remains open, the Second Lien Agent) at a price that conforms with the following Paragraph 6.b (if the offer is for substantially all of the Debtors' assets), and on such other terms that are no less favorable to the Debtors, taken as a whole, than those contained in the Stalking Horse Purchase Agreement (if applicable). Such bid must be irrevocable through the Sale Hearing, unless the bid is selected as the Winning Bid or the Back-Up Bid (as such terms are defined below) at the Sale Hearing, in which case the bid shall be irrevocable through the closing of the Sale Transaction. The Potential Bidder shall also submit a "blacklined" or otherwise marked copy of the Modified Agreement reflecting the differences between the Modified Agreement and the Debtors' form asset purchase agreement, which is attached hereto as Exhibit A (the "Asset Purchase Agreement"), provided that if the Debtors have selected a Stalking Horse Bidder prior to the Bid Deadline, such Modified Agreement must be blacklined against the Stalking Horse Purchase Agreement.

b.     If a Stalking Horse Bidder has been selected, agree in such Modified Agreement, if its bid is for substantially all of the Debtors' assets, to provide consideration in an amount equal to or greater than: (i) the Purchase Price (as defined in the Stalking Horse Purchase Agreement); (ii) the Assumed Liabilities (as defined in the Stalking Horse Purchase Agreement); (iii) the Break-Up Fee; and (iv) $100,000. Such Modified Agreement (i) must provide, upon closing, for the payment of cash equal to the Break-Up Fee, and (ii) may not restructure the Roll-Up DIP Obligations without the consent of the DIP Lenders, the First Lien Obligations, without the consent of the First Lien Lenders, or the Second Lien Obligations without the consent of the Second Lien Lenders.

c.     Make a good faith cash deposit in the form of a cashier's check or wire transfer, in an amount not less than 5% of the purchase price set forth in the Modified Agreement (the "Bid Deposit") into a segregated, interest bearing escrow account (the "Segregated Account") that shall be opened by the Debtors for this purpose.  The Bid Deposit shall immediately become non-refundable (subject to the next sentence) and credited toward the purchase consideration, if and when the transaction with the Potential Bidder approved by the Court (the "Winning Bid" and the "Winning Bidder") is consummated.  If a Potential Bidder's bid is not designated as a Qualified Bid (as defined below), or such bid is not approved as the Winning Bid or the Back-Up Bid at the Sale Hearing, the Bid Deposit of such bidder, plus accrued interest, if any, will be returned to such bidder within three (3) business days after the conclusion of the Sale Hearing.

d.     Provide written evidence reasonably satisfactory to the Debtors, the Committee, the First Lien Agent, the DIP Agent, and, if the Second Lien Agent or its designee has not submitted a bid that remains open, the Second Lien Agent, of (A) its financial ability to

(i) fully and timely perform all obligations under the Modified Agreement if it is declared to be the Winning Bidder, and (ii) provide adequate assurance of future performance under all contracts and leases to be assigned to it, (B) its qualification to own the assets and operate the businesses that are the subject of the Modified Agreement in compliance with all federal, state and local laws, and (C) its corporate authority to enter into and consummate the Sale Transaction.

       e.      Disclose any connections or agreements with the Debtors, the Stalking Horse Bidder, any other known Potential Bidder or Qualified Bidder (as defined below), and/or any officer, director or direct or indirect equity security holder of the Debtors.

       f.      Waive the right to assert or seek payment of any claim, including an administrative expense claims or substantial contribution claim under section 503 of the Bankruptcy Code, with respect to its bid or the marketing or auction process, in its capacity as a bidder.

       7.      If a Potential Bidder delivers all of the materials described in paragraph 6, above, (including the Bid Deposit) by the Bid Deadline, the Debtors, in reasonable consultation with the Committee and the Secured Lenders, will determine whether (i) the Potential Bidder has demonstrated the financial ability to consummate the proposed purchase of the Debtors' assets, (ii) is reasonably likely to be able to and willing to consummate the contemplated transactions and (iii) has otherwise satisfied all of the requirements described in paragraph 6, above. If so, the Debtors shall designate the Potential Bidder as a "Qualified Bidder" and such bid as a "Qualified Bid," provided, that the Debtors' designation of a bid as a Qualified Bid shall not be deemed a determination that such bid is the highest and/or best bid for the Debtors' assets. For the avoidance of doubt, any bid that does not provide for the payment of the following amounts

in full in cash at closing shall not be deemed a Qualified Bid: (a) to the First Lien Agent, for the benefit of the First Lien Lenders, the amount of the Debtors' obligations under the First Lien Credit Agreement, or (b) to the DIP Agent, for the benefit of the DIP Lenders, the amount of the Debtors' obligations under the DIP Credit Agreement, in each case unless the First Lien Agent and DIP Agent, as applicable, otherwise consents in writing, in its sole and absolute discretion. The Debtors shall promptly notify the Stalking Horse Bidder and the Secured Lenders of the identity of all Qualified Bidders. Notwithstanding anything to the contrary contained herein, (y) the Stalking Horse Bidder shall be deemed to be a Qualified Bidder and the Stalking Horse Bid shall be deemed a Qualified Bid and (z) the First Lien Agent, the DIP Agent and the Second Lien Agent shall be deemed Qualified Bidders and any bids submitted by any of them shall be deemed Qualified Bids, as long as any such bid is submitted not less than two (2) days before the Auction.

8.  If the Debtors receive more than one (1) Qualified Bid from a Qualified Bidder (including the Stalking Horse Bidder, if any) prior to the Bid Deadline, then the Debtors shall notify the Secured Lenders, the Stalking Horse Bidder (if any) and each other Qualified Bidder that the Debtors intend to conduct an auction (the "Auction"), subject to reasonable rules and regulations as may be established by the Debtors, consistent with this Order and in reasonable consultation with the Committee, and the Secured Lenders. The Auction to determine the Winning Bidder and the Back-Up Bidder for the Debtors' assets shall be held on March 4, 2014 at 10:00 a.m. (prevailing Eastern Time) at the offices of counsel for the Debtors, Olshan Frome Wolosky LLP, 65 East 55th Street, New York, New York 10022. Each bidder participating at the Auction will be required to confirm that (a) it has not engaged in any collusion with respect to the bidding or the sale and (b) its Qualified Bid does not contain any financing or due

diligence contingencies (unless consented to by the First Lien Agent, the DIP Agent, and the Second Lien Agent). The Auction will be conducted openly, will be videotaped or transcribed, and the Committee, the Secured Lenders, any Qualified Bidders, and each of their respective advisors, will be permitted to attend. The Debtors shall file a notice announcing the results of the Auction and the identity of the proposed Winning Bidder and the Back-Up Bidder on the Court's docket and the Website (each as defined below), as soon as practicable after conclusion of the Auction.

9. Only the Stalking Horse Bidder and other Qualified Bidders may bid at the Auction. Copies of all Qualified Bids shall be provided to the Committee, the Secured Lenders, the Stalking Horse Bidder and each other Qualified Bidder by March 3, 2014 at 5:00 p.m. (prevailing Eastern Time). At the commencement of the Auction, the Debtors shall identify the bid that they have determined (after consultation with the Secured Lenders and the Committee) to be the highest and/or best offer as of such time, and shall permit the Stalking Horse Bidder and other Qualified Bidders to submit higher and/or better bids. Each subsequent bid must exceed the amount of the preceding bid by not less than $100,000 and shall not be modified in a manner that causes it no longer to be a Qualified Bid. The Stalking Horse Bidder, if any, shall be permitted to bid its Break-Up Fee as part of the consideration offered for the Debtors' assets. The DIP Agent or the First Lien Agent, on behalf of itself and any other lenders under the Debtors' postpetition debtor-in-possession financing facility and the Debtors' prepetition senior secured credit facility, and the Second Lien Agent each reserve the right to make a credit bid (pursuant to section 363(k) of the Bankruptcy Code or other applicable law) at the Auction, provided that in accordance with the DIP Order (defined below), the Second Lien Agent's right to credit bid shall be subject to the Payment in Full (as defined in the DIP Orders) of the DIP

Obligations and Prepetition First Lien Obligations (as defined in the DIP Order) unless otherwise agreed in writing by the Prepetition First Lien Agent and DIP Agent. Notwithstanding anything to the contrary contained herein, any bid (including a credit bid) submitted by the DIP Agent, the First Lien Agent or the Second Lien Agent shall be deemed a Qualified Bid, as long as such bid is submitted not less than two (2) days before the Auction.

10. The Debtors, subject to the terms of this Order and the oversight and approval of the Court, and in reasonable consultation with the Committee and the Secured Lenders, shall supervise the bidding process and conduct the Auction in a manner consistent with these Bid Procedures to provide the Stalking Horse Bidder and other Qualified Bidders a full, fair and equal opportunity to participate in the Auction. The Debtors may conduct the Auction in the manner they determine will result in the highest, best, or otherwise financially superior offer for the Debtors' assets and may announce at the Auction additional procedural rules that are reasonable under the circumstances for conducting the Auction so long as such rules are not inconsistent in any material respect with this Order or, if applicable, the Stalking Horse Purchase Agreement. The Debtors reserve the right, in their reasonable business judgment, to make one or more continuances of the Auction to, among other things: facilitate discussions between the Debtors and individual bidders; allow individual bidders to consider how they wish to proceed; and give individual bidders the opportunity to provide the Debtors with such additional evidence as the Debtors in their reasonable business judgment may require, that the individual bidder has sufficient internal resources, or has received sufficient non-contingent debt and/or equity funding commitments for such individual bidder's proposed transaction. The Debtors, in consultation with their financial advisors, their counsel, the Secured Lenders, and the Committee, shall determine which Qualified Bid or combination of Qualified Bids is to be recommended to the

Court for approval as the highest and/or best bid(s). The Debtors shall request at the Sale Hearing that the Court authorize the Debtors to consummate the Sale Transaction to such proposed Winning Bidder.

11. If the Debtors do not receive more than one (1) Qualified Bid (inclusive of the Stalking Horse Bidder), then no Auction shall be scheduled or conducted, and the Court at the Sale Hearing shall solely consider the approval of the Sale Transaction to the single Qualified Bidder (including the Stalking Horse Bidder); the Court shall not consider any competing or alternative offers or proposals to purchase the Debtors' assets subject to such Qualified Bid, nor shall the Court consider any objections to the Motion that are based on the existence or potential for other or different offers or proposals to purchase such assets.

12. The Debtors shall pay to the Stalking Horse Bidder (if applicable) the Break-Up Fee promptly after the closing of a Sale Transaction with a party other than the Stalking Horse Bidder. No bidder other than the Stalking Horse Bidder shall be entitled to any expense reimbursement or break-up fee of any kind with respect to its bid. The Break-Up Fee shall constitute an allowed claim against and administrative expense of the Debtors' estates under Bankruptcy Code sections 503(b) and 507(a)(2).

13. Notwithstanding anything to the contrary contained herein, (i) any payment made or authorized hereunder shall be subject to the requirements imposed on the Debtors under any order approving debtor-in-possession financing (each, a "DIP Order"), and (ii) any claim for which payment is authorized pursuant to this Order that is treated as an administrative expense of the Debtors' estates shall be subject and subordinate to any and all claims, liens, security interests, and priorities granted to the DIP Agent, First Lien Agent and Second Lien Agent under the terms of the applicable DIP Order, and payment on any such claim shall be subject to any

and all restrictions on payments in the DIP Order and any other order of the Court authorizing the Debtors' use of cash collateral. In the event of any conflict between the DIP Order and this Order, the DIP Order shall govern and control.

14.     The Court shall hold a hearing on March 6, 2014 at _____ (prevailing Eastern Time)] (the "Sale Hearing") to consider the approval of the Sale Transaction as set forth in the Motion, approve the Winning Bidder, approve the Back-Up Bidder, if necessary, and confirm the results of the Auction, if applicable.

15.     The Bid Deposit of a Winning Bidder other than the Stalking Horse Bidder shall be forfeited if the Modified Agreement of such Winning Bidder is thereafter terminated by Seller as a result of a breach by the Winning Bidder of its obligations thereunder. The Bid Deposit of the Back-Up Bidder shall remain on deposit in the Segregated Account pending the Closing Date (as defined below), and such deposit shall be forfeited if the Back-Up Bidder becomes the Winning Bidder and its Modified Agreement is thereafter terminated by Seller as a result of a breach by such Back-Up Bidder. In either case, the forfeiture of the Bid Deposit shall be in addition to any other rights, claims and remedies that the Debtors and their bankruptcy estates may have against such Winning Bidder and/or Back-Up Bidder, as applicable (unless otherwise provided in such Winning Bid). If a dispute arises over whether a Bid Deposit is refundable or non-refundable, the Bid Deposit shall remain in the Segregated Account pending a determination of the dispute by the Court or written agreement of the parties.

16.     If the Stalking Horse Bidder becomes the Winning Bidder, but the Stalking Horse Purchase Agreement is terminated pursuant to its terms by Seller as a result of a breach by the Stalking Horse Bidder of its obligations thereunder, the Stalking Horse Bidder shall forfeit the Bid Deposit. The forfeiture of the Bid Deposit shall be in addition to any other rights, claims and

remedies that the Debtors and their bankruptcy estates may have against the Stalking Horse Bidder (unless otherwise provided in the Winning Bid submitted by the Stalking Horse Bidder).

17.     If Qualified Bids have been submitted by more than one Qualified Bidder, the Qualified Bidder that makes the next-highest and/or best Qualified Bid to that of the proposed Winning Bidder at the conclusion of the Auction shall become the back-up bidder (the "<u>Back-Up Bidder</u>") and such Back-Up Bidder's final and highest and/or best Qualified Bid (the "<u>Back-Up Bid</u>") shall remain open and irrevocable pending the closing of the Winning Bid (the "<u>Closing Date</u>").  If a bid of the Stalking Horse Bidder is the next-highest and/or best bid to that of the proposed Winning Bidder, then such bid of the Stalking Horse Bidder shall be the Back-Up Bid. If the transaction with the Winning Bidder does not close prior to the Closing Date (as such date may be extended pursuant to paragraph 18, below), the Back-Up Bid, as selected by the Debtors at the Auction and approved as the Back-Up Bid by the Court at the Sale Hearing, shall upon notice to the Back-Up Bidder by the Debtors (after consultation with the Secured Lenders and the Committee), be deemed the Winning Bid without further order of the Court, and the Back-Up Bidder shall be required to consummate the transaction in accordance with the Stalking Horse Purchase Agreement or Modified Agreement, as applicable.  If the Stalking Horse Bidder is not the Winning Bidder or the Back-Up Bidder, the Stalking Horse Bidder shall have the right, but not the obligation, to keep its bid open pending the Closing Date.

18.     Without in any way modifying the terms of any DIP Order, the Debtors, with the written consent of the DIP Agent and First Lien Agent (which consent shall not be unreasonably withheld), and in consultation with the Second Lien Agent and the Committee, may grant any proposed Winning Bidder additional time to perform and, to the extent necessary, extend the Closing Date.

19.     Objections to the Sale Transaction, if any, shall be in writing and shall be filed and served so as to be actually received by the Court and the following parties (the "Objection Recipients") **on or before February 25, 2014 at 4:00 p.m. (prevailing Eastern Time)**, provided, however, that if the proposed Winning Bidder at the Auction is an entity other than the Stalking Horse Bidder, any supplemental or further objections to the sale to the proposed Winning Bidder solely with respect to such proposed Winning Bidder's adequate assurance of future performance under any purchased contracts and leases shall be filed by no later than the Sale Hearing (the "Objection Deadlines"):  (a) the Debtors, F&H Acquisition Corp., 1551 N. Waterfront Parkway, Suite 310, Wichita, Kansas 67206, Attn: James Zielke; (b) counsel to the Debtors, (i) Olshan Frome Wolosky LLP 65 East 55th Street, New York, NY 10022, Attn: Adam Friedman and (ii) Young Conaway Stargatt & Taylor, LLP, 1000 North King Street, Wilmington, DE 19801, Attn: Robert S. Brady; (c) counsel to the Committee; (d) the First Lien Agent and DIP Agent, General Electric Capital Corporation, 10 Riverview Drive, Danbury, CT 06810, Attn:  David Burger; (e) counsel to the First Lien Agent and DIP Agent, (i) Latham & Watkins, Sears Tower, Suite 5800, Chicago, Illinois 60606 Attn: Peter P. Knight, Esq. and James Ktsanes, Esq. and (ii) Reed Smith LLP, 1201 Market Street, Suite 1500, Wilmington, Delaware 19801, Attn: Kurt Gwynne; (f) the Second Lien Agent, Cerberus Business Finance, LLC, 875 3rd Avenue, 12th Floor, New York, NY 10022, Attn: Eric Miller; (h) counsel to the Second Lien Agent, (i) Klee, Tuchin, Bogdanoff & Stern LLP, 1999 Avenue of the Stars, 39th Floor, Los Angeles, CA 90067, Attn: Michael L. Tuchin, Esq. & David A. Fidler, Esq. and (ii) Landis Rath & Cobb, 919 Market Street, Suite 1800, Wilmington, Delaware 19801, Attn: Adam G. Landis; (i) Imperial Capital LLC, 2000 Avenue of the Stars, Suite 900-South, Los Angeles, CA 90067,

Attention: Nicole Fry; and (j) the U.S. Trustee, 844 King Street, Suite 2207, Wilmington, Delaware 19801, Attn: Richard L. Schepacarter.

20.     Notice of (a) the Motion, (b) the Bid Procedures, (c) the Auction, (d) the Objection Deadlines, (e) the Sale Hearing, and (f) the proposed assumption, assignment and sale of the Contracts to the Stalking Horse Bidder or to any other Winning Bidder shall be good and sufficient, and no other or further notice shall be required, if given as follows:

a.      <u>Notice of Sale, Auction and Sale Hearing</u>: Within three (3) business days after entry of this Order, the Debtors (or their agents) shall:

i.      provide notice, in substantially the form attached hereto as <u>Exhibit B</u> (the "<u>Sale Notice</u>"), of this Order, the Motion, the Auction, the Objection Deadlines, and the Sale Hearing by first-class mail upon (a) all Persons known by the Debtors to have expressed an interest to the Debtors in a transaction with respect to the Debtors' assets or a portion thereof during the past six (6) months; (b) all Persons known by the Debtors to have asserted any Lien or interest in the Debtors' assets; (c) all Persons known by the Debtors to be counterparties to Contracts; (d) the U.S. Trustee; (e) the Committee and its counsel; (f) any Governmental Body known to have a claim in the Bankruptcy Cases; (g) all other known creditors and equity security holders of the Debtors; (h) all Persons that have requested special notice in the Bankruptcy Cases; and (i) all other Persons as directed by the Court;

ii.     cause the Sale Notice to be published on http://www.dm.epiq11.com/foxhound (the "<u>Website</u>") as soon as practicable after entry of this Order; and

iii.    cause the Sale Notice to be published on one occasion in *The Wall Street Journal* or *The New York Times*, national editions.

b.      <u>Assumption, Assignment, Sale and Cure Notice</u>.

i.      At least twenty-eight (28) days prior to the Sale Hearing (i.e., on or before February 6, 2014), the Debtors shall file with the Court and serve via first class mail on all Persons known by the Debtors to be a counterparty to a Contract, a notice of assumption, assignment, sale and cure substantially in the form attached hereto as <u>Exhibit C</u> (the "<u>Notice of Assumption, Assignment and Sale</u>"). The Notice of Assumption, Assignment and Sale shall include (a) a statement that the Contracts listed therein may be treated as "Purchased Contracts" under the Asset Purchase Agreement (or Stalking Horse Purchase Agreement or Modified Agreement) by their inclusion on Schedule 1.1(b) to the Asset Purchase

Agreement (or a corresponding schedule in the Stalking Horse Purchase Agreement or Modified Agreement), (b) a statement that certain of the Contracts listed therein may be designated as "Designation Right Assets" under the Asset Purchase Agreement (or Stalking Horse Purchase Agreement or Modified Agreement) and thereafter rejected or assumed, assigned and sold at a date subsequent to the Closing Date, (c) the Debtors' calculation of the amount necessary, if any, to cure any and all defaults under the Contracts and compensate the counterparties thereto for pecuniary loss in respect of any such default(s) (the "Cure Amount") as a condition to assumption, assignment and sale of such Contract under Bankruptcy Code sections 363 and 365(b), and (d) evidence of the Stalking Horse Bidder's (if one is selected 28 days prior to the Sale Hearing) ability to provide adequate assurance of performance of such executory contracts or unexpired leases.

ii. Any subsequent Notice of Assumption, Assignment and Sale that identifies a Contract that was not previously identified as being subject to assumption, assignment and sale under the Asset Purchase Agreement (or Stalking Horse Purchase Agreement or Modified Agreement) or that reduces the Debtors' calculation of the Cure Amount (an "Amended Notice of Assumption, Assignment and Sale") shall provide a deadline of not less than seven (7) days from the date of service of such Amended Notice of Assumption, Assignment and Sale by which the counterparty to any modification may object to (a) the assumption, assignment and sale of such Contract pursuant to the Asset Purchase Agreement (or Stalking Horse Agreement or Modified Agreement); (b) the Debtors' calculation of the Cure Amount for such Contract; and (c) adequate assurance of performance, if such Contract was not previously identified as being subject to assumption, assignment and sale.

iii. The Notice of Assumption, Assignment and Sale and any Amended Notice of Assumption, Assignment and Sale will be posted on the Website.

iv. The Debtors reserve the right to (i) provide Amended Notices of Assumption, Assignment and Sale up to the Closing of the Asset Purchase Agreement (or Stalking Horse Agreement or Modified Agreement); (ii) remove a Contract from the list of Purchased Contracts at any time prior to the Closing of such agreement, for any reason; and (iii) to remove a Contract from the list of Purchased Contracts after the closing of the Asset Purchase Agreement (or Stalking Horse Agreement or Modified Agreement), if the Court determines after such Closing that the Cure Amount for such Contract is in excess of the amount set forth on Exhibit 1 to the Notice of Assumption, Assignment and Sale. The removal of any such Contract shall not reduce the purchase price to be paid by the Winning Bidder unless consented to by the DIP Agent, First Lien Agent, and Second Lien Agent. In addition, one or more of the Contracts listed on Exhibit 1 to the Notice of Assumption, Assignment and Sale may be designated as a Designation Right Asset at the Closing of the asset purchase agreement submitted by the Winning Bidder (including the Stalking Horse Bidder) and in such case

may be assumed by the Debtors and assigned and sold to the designated Person, if it makes a written election to accept an assignment of such Contract within to the time frame provided in the Winning Bidder's (including the Stalking Horse Bidder's) asset purchase agreement.

v.     Any counterparty to a Contract shall file and serve on the Objection Recipients any objections to (a) the proposed assumption, assignment and sale of its Contract to the Winning Bidder (and must state in its objection, with specificity, the legal and factual basis of its objection) and (b) if applicable, the proposed Cure Amount (and must state in its objection, with specificity, what Cure Amount is required with appropriate documentation in support thereof), **no later than February 25, 2014 at 4:00 p.m. (prevailing Eastern Time)**; provided, however, that to the extent the Winning Bidder is an entity other than the Stalking Horse Bidder, any supplemental or further objections to the assumption, assignment and sale of a Contract to the Winning Bidder by a counterparty to such Contract, based solely on the Winning Bidder(s)' and/or Backup Bidder(s)' adequate assurance of future performance under any such Purchased Contract shall be filed no later than the Sale Hearing; provided further that the deadline to object to an Amended Notice of Assumption, Assignment and Sale shall be no earlier than seven (7) days after the date of service of such Amended Notice of Assumption, Assignment and Sale.  If no objection is timely filed and served, (x) the counterparty to a Contract shall be deemed to have irrevocably consented to the assumption, assignment and sale of the Contract to the Winning Bidder and shall be forever barred from asserting any objection with regard to such assumption, assignment and sale, and (y) the Cure Amount set forth in the Notice of Assumption, Assignment and Sale (or Amended Notice of Assumption, Assignment and Sale) shall be controlling, notwithstanding anything to the contrary in any Contract, any other document or applicable law, and the counterparty to the Contract shall be deemed to have irrevocably consented to the Cure Amount and shall be forever barred from asserting any other claims related to such Contract against the Debtors or the Winning Bidder, or the property of any of them.

vi.     If the Winning Bidder or the Back-Up Bidder at the Auction is not the Stalking Horse Bidder (or there is no Stalking Horse Bidder), then within one (1) day after the Auction, the Debtors shall (i) file and serve on each counterparty to the Contracts, a supplemental Notice of Assumption, Assignment and Sale identifying the Winning Bidder and Back-Up Bidder (if applicable) and providing information regarding the Winning Bidder's and Back-Up Bidder's (if applicable) adequate assurance and (ii) publish such supplemental Notice of Assumption, Assignment and Sale on the Website.

21.     A list of all Contracts assumed, assigned and sold to the Winning Bidder as "Purchased Contracts" under the Asset Purchase Agreement (or Stalking Horse Purchase Agreement or Modified Agreement) as of the Closing of such agreement shall be filed with the

Court no later than five (5) business days following the Closing of such agreement. In addition, a list of all Designation Rights Assets sold to the Winning Bidder shall be filed with the Court no later than five (5) business days following the expiration of the Designation Rights Period.

22.     The Debtors and their advisors shall reasonably consult regularly with the Secured Lenders and their advisors (unless such person has submitted a bid that is still open) on all material aspects of the sale process described in these Bid Procedures and all material decisions and documents contemplated herein, including, without limitation, all instances in which such parties have express consultation rights in these Bid Procedures. Notwithstanding anything in this Order to the contrary, solely during such period as any of the Secured Lenders has submitted a Bid that is still open, such bidding Secured Party shall not be entitled to any consultation rights provided in this Bid Procedures Order.

23.     Subject to the terms of any DIP Order and the Stalking Horse Purchase Agreement, the Debtors may (a) extend the Bid Deadline and any related deadlines set forth in this Order by ten (10) business days or less without further order of this Court and (b) postpone the Auction by ten (10) business days or less without further order of this Court; provided, that the Debtors must provide notice of such extension or postponement, as applicable, to (i) all prospective bidders; (ii) the U.S. Trustee; (iii) the Committee and its counsel; and (iv) the Secured Lenders and their counsel.

24.     Notwithstanding any applicability of Bankruptcy Rules 6004(h), 7062, or 9014, the terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

25.     This Court shall retain jurisdiction to enforce and interpret the provisions of this Order.

Dated: _____
        Wilmington, Delaware
                                    _____
                                    UNITED STATES BANKRUPTCY JUDGE

<u>**EXHIBIT A**</u>

**ASSET PURCHASE AGREEMENT**

*[TO BE FILED PRIOR TO HEARING ON BID PROCEDURES ORDER]*

**EXHIBIT B**

**SALE NOTICE**

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | Chapter 11 |
| F & H ACQUISITION CORP., et al.,[1] | Case No. 13-13220 (____) |
| Debtors. | Jointly Administered |
|  | **Ref. Docket No. _____** |

## NOTICE OF AUCTION AND SALE HEARING

**PLEASE TAKE NOTICE OF THE FOLLOWING:**

      1.      On December 15, 2013, F&H Acquisition Corp. and its debtor affiliates, as debtors and debtors in possession (collectively, the "Debtors"), each filed voluntary petitions for relief pursuant to chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").

      2.      On the same day, the Debtors filed a motion (the "Bid Procedures Motion"), pursuant to sections 363 and 365 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, and 6006, seeking entry of an order (the "Bid Procedures Order") (a) scheduling an auction (the "Auction") for the sale of substantially all of the Debtors' assets (the "Purchased Assets") and a hearing to approve the sale of the Purchased Assets (the "Sale Hearing"); (b) approving dates, deadlines and procedures (the "Bid Procedures") for submitting competing bids for the Purchased Assets; (c) authorizing the Debtors to provide certain bid protections (the "Break-Up Fee") to a potential "stalking horse" bidder (the "Stalking Horse Bidder"); (d) approving the form and manner of the notice of the Auction and the Sale Hearing; and (e)

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: F & H Acquisition Corp. (2666); 505 Entertainment, Ltd. (4594); Alabama Fox & Hound, Inc. (5894); Bryant Beverage Corporation (0639); Champps Entertainment, Inc. (0491); Champps Entertainment of Texas, Inc. (7242); Champps of Maryland (1010); Champps Operating Corporation (5130); Downtown Beverage Corp. (3943); F & H of Iowa, Inc. (2434); F & H of Kennesaw, Inc. (5997); F & H Restaurant Corp. (8349); F & H Restaurant of Georgia, Inc. (2200); F & H Restaurant of Texas, Inc. (9871); Fox & Hound of Arizona, Inc. (3585); Fox & Hound of Colorado, Inc. (7166); Fox & Hound of Illinois, Inc. (3003); Fox & Hound of Indiana, Inc. (5676); Fox & Hound of Kansas, Inc. (7699); Fox & Hound of Kentucky, Inc. (0777); Fox & Hound of Littleton, Inc. (2894); Fox & Hound of Louisiana, Inc. (0477); Fox & Hound of Maryland, Inc. (7608); Fox & Hound of Nebraska, Inc. (5786); Fox & Hound of New Jersey, Inc. (0951); Fox & Hound of New Mexico, Inc. (5620); Fox & Hound of Ohio, Inc. (3963); Fox & Hound of Oklahoma, Inc. (2928); Fox & Hound of Texas, Inc. (0979); Fox & Hound Restaurant Group (6614); Fox & Hound, Inc. (9035); Fox & Hound II, Inc. (9540); Fuqua Beverage Corp. (4906); Jackson Beverage Corporation (3948); N. Collins Entertainment, Ltd. (4596); Raider Beverage Corporation (4993); Rocket Beverage Corporation (9829); Shenandoah Beverage Corporation (8087); Tent Finance, Inc. (5335); Tent Restaurant Operations, Inc. (5556); Willowbrook Beverage Corp. (1601); Winston-Salem Fox & Hound, Inc. (8319). The location of the Debtors' corporate headquarters and the Debtors' service address is: 1551 N. Waterfront Pkwy, Suite 310, Wichita, KS 67206).

approving procedures for the assumption, assignment and sale of contracts and leases to any purchaser of the Purchased Assets, and/or to resolve any objections thereto.

3.  On [    ], the United States Bankruptcy Court for the District of Delaware entered the Bid Procedures Order. Pursuant to the Bid Procedures Order, if the Debtors receive more than one Qualified Bid (as defined in the Bid Procedures Order), inclusive of any bid received from a Stalking Horse Bidder, for the Purchased Assets, the Auction shall take place on **March 4, 2014, commencing at 10:00 a.m. (prevailing Eastern Time)** at the offices of Olshan Frome Wolosky LLP 65 East 55th Street, New York, NY 10022. Only parties that have submitted a Qualified Bid, as set forth in the Bid Procedures Order, by no later than **February 25, 2014 at 5:00 p.m. (Prevailing Eastern Time)** (the "Bid Deadline") may bid at the Auction. Any party that wishes to take part in this process and submit a bid for the Purchased Assets must submit its competing bid prior to the Bid Deadline and in accordance with the Bid Procedures.

4.  The Sale Hearing to consider approval of the sale of the Purchased Assets to the Stalking Horse Bidder, if one is selected, or to a different Winning Bidder (as defined in the Bid Procedures Order), as applicable, free and clear of all liens, claims, and encumbrances not expressly permitted under the Winning Bidder's asset purchase agreement, will be held before the Honorable [    ], United States Bankruptcy Judge, 824 North Market Street, Wilmington, Delaware 19801 on **March 6, 2014 at [    ] (prevailing Eastern Time)**, or at such other time thereafter as counsel may be heard. The Sale Hearing may be adjourned from time to time without further notice to creditors or parties in interest other than by announcement of the adjournment in open court on the date scheduled for the Sale Hearing.

5.  Objections, if any, to the sale, must: (a) be in writing; (b) comply with the Bankruptcy Rules and Local Rules; and (c) be filed with the clerk of the Bankruptcy Court for the District of Delaware, Third Floor, 824 North Market Street, Wilmington, Delaware 19801, on or before **February 25, 2014 at 4:00 p.m. (prevailing Eastern Time)** (the "Objection Deadline"); and be served upon (a) the Debtors, F&H Acquisition Corp., 1551 N. Waterfront Parkway, Suite 310, Wichita, Kansas 67206, Attn: James Zielke; (b) (i) Olshan Frome Wolosky LLP 65 East 55th Street, New York, NY 10022, Attn: Adam Friedman (ii) Young Conaway Stargatt & Taylor, LLP, 1000 North King Street, Wilmington, DE 19801, Attn: Robert S. Brady; (c) counsel to the Committee; (d) the First Lien Agent and DIP Agent, General Electric Capital Corporation, 10 Riverview Drive, Danbury, CT 06810, Attn: David Burger; (e) counsel to the First Lien Agent and DIP Agent, (i) Latham & Watkins, Sears Tower, Suite 5800, Chicago, Illinois 60606 Attn: Peter P. Knight, Esq. and James Ktsanes, Esq. and (ii) Reed Smith LLP, 1201 Market Street, Suite 1500, Wilmington, Delaware 19801, Attn: Kurt Gwynne; (f) the Second Lien Agent, Cerberus Business Finance, LLC, Cerberus Business Finance, LLC, 875 3rd Avenue, 12th Floor, New York, NY 10022, Attn: Eric Miller; (h) counsel to the Second Lien Agent, (i) Klee, Tuchin, Bogdanoff & Stern LLP, 1999 Avenue of the Stars, 39th Floor, Los Angeles, CA 90067, Attn: Michael L. Tuchin, Esq. & David A. Fidler, Esq. and (ii) Landis Rath & Cobb, 919 Market Street, Suite 1800, Wilmington, Delaware 19801, Attn: Adam G. Landis; and (i) Imperial Capital LLC, 2000 Avenue of the Stars, Suite 900-South, Los Angeles, CA 90067, Attention: Nicole Fry; and (j) the U.S. Trustee, 844 King Street, Suite 2207, Wilmington, Delaware 19801, Attn: Richard L. Schepacarter, **so as to be received no later than the Objection Deadline**; provided, however, that if the Winning Bidder at the Auction is an entity other than the Stalking Horse Bidder, any objections to the Winning Bidder's ability to provide

adequate assurance of performance of any executory contracts or unexpired leases to be assumed and assigned to the Winning Bidder shall be filed no later than the Sale Hearing. UNLESS AN OBJECTION IS TIMELY SERVED AND FILED IN ACCORDANCE WITH THIS NOTICE, IT MAY NOT BE CONSIDERED BY THE BANKRUPTCY COURT AND THE BANKRUPTCY COURT MAY GRANT THE RELIEF REQUESTED WITHOUT FURTHER HEARING AND NOTICE.

6.     This Notice of Auction and Sale Hearing is subject to the fuller terms and conditions of the Bid Procedures Motion and the Bid Procedures Order, with such Bid Procedures Order controlling in the event of any conflict, and the Debtors encourage parties-in-interest to review such documents in their entirety. Parties interested in receiving more information regarding the sale of the Purchased Assets and/or copies of any related document, including the Asset Purchase Agreement, the Bid Procedures Motion, or the Bid Procedures Order, may make a written request to: (a) the financial advisors to the Debtors, Imperial Capital LLC, 2000 Avenue of the Stars, Suite 900-South, Los Angeles, CA 90067, Attention: Nicole Fry, or (b) counsel to the Debtors (i) Olshan Frome Wolosky LLP 65 East 55th Street, New York, NY 10022, Attn: Adam Friedman and (ii) Young Conaway Stargatt & Taylor, LLP, 1000 North King Street, Wilmington, DE 19801, Attn: Robert S. Brady. In addition, copies of the Bid Procedures Motion, the Bid Procedures Order and this Notice can be found on (i) the Court's website, www.deb.uscourts.gov; and (ii) http://www.dm.epiq11.com/foxhound, and are on file with the Clerk of the Bankruptcy Court, Third Floor, 824 Market Street, Wilmington, Delaware 19801.

Dated: _____          YOUNG CONAWAY STARGATT & TAYLOR, LLP
     Wilmington, Delaware

                                           _____
                                           Robert S. Brady (No. 2847)
                                           Robert F. Poppiti, Jr. (No. 5052)
                                           Rodney Square
                                           1000 North King Street
                                           Wilmington, Delaware 19801
                                           Telephone:  (302) 571-6600
                                         Facsimile:  (302) 571-1253

                                           and

                                         Adam H. Friedman
                                         Jordanna L. Nadritch
                                         Jonathan T. Koevary
                                         OLSHAN FROME WOLOSKY LLP
                                         Park Avenue Tower
                                         65 East 55th Street
                                         New York, New York 10022
                                         Telephone:  (212) 451-2300
                                         Facsimile:  (212) 451-2222

                                         *Proposed Counsel to the Debtors*

# EXHIBIT C

## NOTICE OF ASSUMPTION, ASSIGNMENT AND SALE

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| F & H ACQUISITION CORP., et al.,[1] | Case No. 13-13220 (____) |
| Debtors. | Jointly Administered |
| | **Ref. Docket No. _____** |

## NOTICE OF PROPOSED ASSUMPTION, ASSIGNMENT AND SALE
## OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

You are receiving this *Notice of Proposed Assumption, Assignment and Sale of Executory Contracts and Unexpired Leases* (the "<u>Notice of Assumption, Assignment and Sale</u>") because you may be a counterparty to a contract or lease with F&H Acquisition Corp. or one or more of its affiliated debtors. Please read this notice carefully as your rights may be affected by the transactions described herein.

**PLEASE TAKE NOTICE** that on [    ], the United States Bankruptcy Court for the District of Delaware (the "<u>Bankruptcy Court</u>") entered an order [Docket No. ____] (the "<u>Bid Procedures Order</u>") approving the *Debtors' Motion Requesting (A) the Scheduling of an Auction and Sale Hearing in Connection with the Sale of the Debtors' Assets, (B) Authorizing the Debtors to Provide Certain Bid Protections Without Further Order of the Court (C) Approval of the Form and Scope of Notice of Auction and Sale Hearing, (D) Approval of Procedures for the Assumption, Assignment and Sale of Contracts and Leases to the Purchaser, and (E) Approval of Sale of the Debtors' Assets to the Purchaser* (the "<u>Bid Procedures Motion</u>"), filed by F&H Acquisition Corp. and its affiliated debtors, as debtors in possession in the above-captioned

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: F & H Acquisition Corp. (2666); 505 Entertainment, Ltd. (4594); Alabama Fox & Hound, Inc. (5894); Bryant Beverage Corporation (0639); Champps Entertainment, Inc. (0491); Champps Entertainment of Texas, Inc. (7242); Champps of Maryland (1010); Champps Operating Corporation (5130); Downtown Beverage Corp. (3943); F & H of Iowa, Inc. (2434); F & H of Kennesaw, Inc. (5997); F & H Restaurant Corp. (8349); F & H Restaurant of Georgia, Inc. (2200); F & H Restaurant of Texas, Inc. (9871); Fox & Hound of Arizona, Inc. (3585); Fox & Hound of Colorado, Inc. (7166); Fox & Hound of Illinois, Inc. (3003); Fox & Hound of Indiana, Inc. (5676); Fox & Hound of Kansas, Inc. (7699); Fox & Hound of Kentucky, Inc. (0777); Fox & Hound of Littleton, Inc. (2894); Fox & Hound of Louisiana, Inc. (0477); Fox & Hound of Maryland, Inc. (7608); Fox & Hound of Nebraska, Inc. (5786); Fox & Hound of New Jersey, Inc. (0951); Fox & Hound of New Mexico, Inc. (5620); Fox & Hound of Ohio, Inc. (3963); Fox & Hound of Oklahoma, Inc. (2928); Fox & Hound of Texas, Inc. (0979); Fox & Hound Restaurant Group (6614); Fox & Hound, Inc. (9035); Fox & Hound II, Inc. (9540); Fuqua Beverage Corp. (4906); Jackson Beverage Corporation (3948); N. Collins Entertainment, Ltd. (4596); Raider Beverage Corporation (4993); Rocket Beverage Corporation (9829); Shenandoah Beverage Corporation (8087); Tent Finance, Inc. (5335); Tent Restaurant Operations, Inc. (5556); Willowbrook Beverage Corp. (1601); Winston-Salem Fox & Hound, Inc. (8319). The location of the Debtors' corporate headquarters and the Debtors' service address is: 1551 N. Waterfront Pkwy, Suite 310, Wichita, KS 67206).

chapter 11 cases (collectively, the "Debtors").  The Bid Procedures Motion and Bid Procedures Order set forth certain dates, deadlines and procedures (the "Bid Procedures") in connection with the sale of substantially all of the Debtors' assets (the "Sale Transaction").  Additional information regarding the Bid Procedures and the Sale Transaction is available on the website of Epiq Systems, the court-appointed claims agent in the Debtors' chapter 11 cases, at http://www.dm.epiq11.com/foxhound (the "Website").

PLEASE TAKE FURTHER NOTICE that the contracts and leases listed on Exhibit 1 attached hereto (each, a "Contract" and collectively, the "Contracts") may be designated as "Purchased Contracts" and assumed, assigned and sold to successful purchaser of the Debtors' asset pursuant to an order of the Bankruptcy Court approving the Sale Transaction (a "Sale Order"). In addition, one or more of the Contracts listed on Exhibit 1 may be designated as a Designation Right Asset at the Closing of the asset purchase agreement submitted by the Winning Bidder (including the Stalking Horse Bidder (as those terms are defined in the Bid Procedures Order)) and in such case may be assumed by the Debtors and assigned and sold to the designated Person, if it makes a written election to accept an assignment of such Contract within the time frame provided in the Winning Bidder's asset purchase agreement.  The amount necessary, if any, to cure any and all defaults under each Contract and compensate the counterparty thereto for any and all pecuniary loss in respect of such default(s) under Bankruptcy Code section 365(b), if any, as a condition to assumption, assignment and sale of each Contract (the "Cure Amount") is set forth on Exhibit 1 hereto.

PLEASE TAKE FURTHER NOTICE that if the Stalking Horse Bidder is not the Winning Bidder or no Stalking Horse Bidder is selected, then within one day after determining the Winning Bidder, the Debtors will send a supplemental notice to each known counterparty to the Contracts identifying the Winning Bidder and providing information regarding the Winning Bidder's adequate assurance of future performance under the Contracts. Such notice will also be published on the Website.

PLEASE TAKE FURTHER NOTICE that the Debtors may, prior to the closing of the Winning Bidder's asset purchase agreement, amend this Notice of Assumption, Assignment and Sale and give notice of the supplement or modification by the Winning Bidder of the list of Purchased Contracts under the Winning Bidder's asset purchase agreement (including a modification by which a Purchased Contract may be determined to be a Designation Rights Asset).  If you are affected by any such amendment, supplement or modification, you will receive prompt notice thereof.  Following the closing of the Winning Bidder's asset purchase agreement, the Debtors may remove a Contract from the list of Purchased Contracts  if the Court determines after such closing that the Cure Amount  for such Contract is in excess of the amount set forth on Exhibit 1 hereto and based on that the Winning Bidder determines to remove such Contract from its list of Purchased Contracts.

PLEASE TAKE FURTHER NOTICE that any objections to the assumption, assignment and sale of any Contract identified in this notice, including to the Cure Amount set forth in Exhibit 1 to this notice, must be in writing, filed with the Bankruptcy Court, and be **actually received** by the Objection Notice Parties (as defined below) **no later than February 25, 2014 at 4:00 p.m. (prevailing Eastern Time)** (the "Assignment and Cure Objection Deadline"); provided, however, that to the extent the Winning Bidder is an entity other than the

Stalking Horse Bidder, any supplemental or further objections to the sale to the Winning Bidder by a counterparty to a Contract based solely on the Winning Bidder(s)' and/or Backup Bidder(s)' (as such term is defined in the Bid Procedures Motion) adequate assurance of future performance under any such Contract shall be filed no later than the Sale Hearing (the "Supplemental Assignment and Cure Objection Deadline").  Any such objections must set forth the specific defaults under the Contract and claim a specific monetary amount that differs from the Cure Amount, if any, specified by the Debtors.  Other than the Cure Amounts listed on Exhibit 1, the Debtors are not aware of any amounts due and owing in respect of the Contracts listed therein or any other amounts that must be paid as a condition to assumption, assignment and sale of the Contracts pursuant to the Bankruptcy Code.  If any party believes that any such additional amounts are owed in respect of any Contract included on Exhibit 1, such party must assert such claim in accordance with the procedures set forth above no later than the Assignment and Cure Objection Deadline or be forever barred from asserting such claim.

**PLEASE TAKE FURTHER NOTICE that each non-debtor party to a Contract that does not timely file an objection by the Assignment and Cure Objection Deadline or the Supplemental Assignment and Cure Objection Deadline (as applicable) shall be forever barred from objecting to assignment and assumption of the Contract and/or the Cure Amounts set forth in Exhibit 1, including, without limitation, the right to assert any additional cure or other amounts with respect to the Contract arising or relating to any period prior to such assumption.  The Debtors are not aware of any defaults under any Contract, other than defaults that will be cured and compensated by payment of the Cure Amounts, if any, set forth on Exhibit 1 hereto.  If any non-debtor party fails to raise a timely objection, such non-debtor party shall be barred from raising such defaults against any person or entity and shall be deemed to have waived such default for all purposes.**

**PLEASE TAKE FURTHER NOTICE** that the Objection Notice Parties are (a) the Debtors, F&H Acquisition Corp., 1551 N. Waterfront Parkway, Suite 310, Wichita, Kansas 67206, Attn: James Zielke; (b) counsel to the Debtors, (i) Olshan Frome Wolosky LLP 65 East 55th Street, New York, NY 10022, Attn: Adam Friedman and (ii) Young Conaway Stargatt & Taylor, LLP, 1000 North King Street, Wilmington, DE 19801, Attn: Robert S. Brady; (c) counsel to the Committee; (d) the First Lien Agent and DIP Agent, General Electric Capital Corporation, 10 Riverview Drive, Danbury, CT 06810, Attn:  David Burger; (e) counsel to the First Lien Agent and DIP Agent, (i) Latham & Watkins, Sears Tower, Suite 5800, Chicago, Illinois 60606 Attn: Peter P. Knight, Esq. and James Ktsanes, Esq. and (ii) Reed Smith LLP, 1201 Market Street, Suite 1500, Wilmington, Delaware 19801, Attn: Kurt Gwynne; (f) the Second Lien Agent, Cerberus Business Finance, LLC, 875 3rd Avenue, 12th Floor, New York, NY 10022, Attn: Eric Miller; (h) counsel to the Second Lien Agent, (i) Klee, Tuchin, Bogdanoff & Stern LLP, 1999 Avenue of the Stars, 39th Floor, Los Angeles, CA 90067, Attn: Michael L. Tuchin, Esq. & David A. Fidler, Esq. and (ii) Landis Rath & Cobb, 919 Market Street, Suite 1800, Wilmington, Delaware 19801, Attn: Adam G. Landis; and (i) Imperial Capital LLC, 2000 Avenue of the Stars, Suite 900-South, Los Angeles, CA 90067, Attention: Nicole Fry; and (j) the U.S. Trustee, 844 King Street, Suite 2207, Wilmington, Delaware 19801, Attn: Richard L. Schepacarter.

**PLEASE TAKE FURTHER NOTICE** that, if no objections are received by the above deadlines, the assumption, assignment and sale of the Contracts set forth on Exhibit 1 shall

be authorized pursuant to the terms of the Sale Transaction and the Sale Order and the Cure Amounts set forth in Exhibit 1 shall be binding upon the non-debtor party to the Contract for all purposes and will constitute a final determination of total cure amounts required to be paid by the Debtors in connection with the assumption, assignment and sale of the Contract.

   **PLEASE TAKE FURTHER NOTICE** that if a timely objection is received and such objection cannot otherwise be resolved by the parties, the Bankruptcy Court may hear such objection at a later date set by the Court.

   **PLEASE TAKE FURTHER NOTICE** that this Notice of Assumption, Assignment and Sale is subject to the fuller terms and conditions of the Bid Procedures Motion and the Bid Procedures Order, with such Bid Procedures Order controlling in the event of any conflict, and the Debtors encourage parties-in-interest to review such documents in their entirety. Parties with questions regarding the proposed assumption, assignment and sale procedures contained herein should contact the Debtors' counsel, contact information for which is reflected below and on the Website.

Dated: _____     YOUNG CONAWAY STARGATT & TAYLOR, LLP
   Wilmington, Delaware

       _____
       Robert S. Brady (No. 2847)
       Robert F. Poppiti, Jr. (No. 5052)
       Rodney Square
       1000 North King Street
       Wilmington, Delaware 19801
       Telephone:  (302) 571-6600
       Facsimile:  (302) 571-1253

         and

       Adam H. Friedman
       Jordanna L. Nadritch
       Jonathan T. Koevary
       OLSHAN FROME WOLOSKY LLP
       Park Avenue Tower
       65 East 55th Street
       New York, New York 10022
       Telephone:  (212) 451-2300
       Facsimile:  (212) 451-2222

       *Proposed Counsel to the Debtors*

**<u>Exhibit 1</u>**

**Contracts and Cure Amounts**

## Exhibit 2

**Proof of Stalking Horse Bidder's Ability to Provide Adequate Assurance of Performance**