## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| F & H ACQUISITION CORP., et al.,[1] | Case No. 13-13220 (KG) |
| Debtors. | Jointly Administered |
| | **Ref. Docket No. 11** |

### INTERIM ORDER (I) AUTHORIZING DEBTORS TO OBTAIN POSTPETITION FINANCING PURSUANT TO SECTION 364 OF THE BANKRUPTCY CODE, (II) AUTHORIZING THE USE OF CASH COLLATERAL PURSUANT TO SECTION 363 OF THE BANKRUPTCY CODE, (III) GRANTING ADEQUATE PROTECTION TO THE PREPETITION SECURED PARTIES PURSUANT TO SECTIONS 361, 362, 363 AND 364 OF THE BANKRUPTCY CODE, (IV) GRANTING LIENS AND SUPERPRIORITY CLAIMS, (V) MODIFYING AUTOMATIC STAY, AND (VI) SCHEDULING A FINAL HEARING

Upon the motion dated December 12, 2013 (the "DIP Motion") of the above-captioned

debtors and debtors-in-possession (collectively, the "Debtors") in the above-referenced chapter

11 cases (the "Cases") seeking entry of an interim order (this "Interim Order") pursuant to

sections 105, 361, 362, 363(b), 363(c)(2), 364(c)(l), 364(c)(2), 364(c)(3), 364(d)(l), 364(e), 507

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: F & H Acquisition Corp. (2666); 505 Entertainment, Ltd. (4594); Alabama Fox & Hound, Inc. (5894); Bryant Beverage Corporation (0639); Champps Entertainment, Inc. (0491); Champps Entertainment of Texas, Inc. (7242); Champps of Maryland (1010); Champps Operating Corporation (5130); Downtown Beverage Corp. (3943); F & H of Iowa, Inc. (2434); F & H of Kennesaw, Inc. (5997); F & H Restaurant Corp. (8349); F & H Restaurant of Georgia, Inc. (2200); F & H Restaurant of Texas, Inc. (9871); Fox & Hound of Arizona, Inc. (3585); Fox & Hound of Colorado, Inc. (7166); Fox & Hound of Illinois, Inc. (3003); Fox & Hound of Indiana, Inc. (5676); Fox & Hound of Kansas, Inc. (7699); Fox & Hound of Kentucky, Inc. (0777); Fox & Hound of Littleton, Inc. (2894); Fox & Hound of Louisiana, Inc. (0477); Fox & Hound of Maryland, Inc. (7608); Fox & Hound of Nebraska, Inc. (5786); Fox & Hound of New Jersey, Inc. (0951); Fox & Hound of New Mexico, Inc. (5620); Fox & Hound of Ohio, Inc. (3963); Fox & Hound of Oklahoma, Inc. (2928); Fox & Hound of Texas, Inc. (0979); Fox & Hound Restaurant Group (6614); Fox & Hound, Inc. (9035); Fox & Hound II, Inc. (9540); Fuqua Beverage Corp. (4906); Jackson Beverage Corporation (3948); N. Collins Entertainment, Ltd. (4596); Raider Beverage Corporation (4993); Rocket Beverage Corporation (9829); Shenandoah Beverage Corporation (8087); Tent Finance, Inc. (5335); Tent Restaurant Operations, Inc. (5556); Willowbrook Beverage Corp. (1601); Winston-Salem Fox & Hound, Inc. (8319). The location of the Debtors' corporate headquarters and the Debtors' service address is: 1551 N. Waterfront Pkwy, Suite 310, Wichita, KS 67206).

and 552 of title 11 of the United States Code (as amended, the "Bankruptcy Code"), Rules 2002, 4001, 6004 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 4001-2 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), that, among other things:

(i)        authorizes the Debtors designated as "Borrowers" under, and as defined in, the DIP Credit Agreement (as defined below) (collectively, the "DIP Borrowers") to obtain senior secured priming and superpriority postpetition financing, which if approved on a final basis, would consist of (i) a letter of credit facility comprised of all existing prepetition Letters of Credit (as defined in the Prepetition First Lien Secured Credit Agreement (as defined below), collectively, the "Prepetition Letters of Credit"), including any renewals thereof, in an aggregate face amount not to exceed $2,269,000 (the "LC Facility"), (ii) a revolving credit facility (the "Revolver Facility") for up to $9,600,000 in principal, which would include a sublimit of $1,000,000 for Letters of Credit issued from and after the Petition Date (collectively, the "Postpetition Letters of Credit"), and (iii) upon entry of a Final Order (as defined below), the Prepetition First Lien Roll-Up (as defined below) (collectively with the LC Facility and Revolver Facility, the "DIP Facility") pursuant to the terms of (x) this Interim Order, (y) that certain Senior Secured Priming and Superpriority Debtor-in-Possession Credit Agreement, dated as of the Petition Date (as the same may be amended, restated, supplemented, or otherwise modified from time to time in accordance with its terms and the terms of the Interim Order, the "DIP Credit Agreement," attached hereto as Exhibit B), by and among the DIP Borrowers, the other Credit Parties party thereto, General Electric Capital Corporation ("GECC"), as administrative agent (in such capacity, the "DIP Agent"), GECC and the other financial institutions party to the DIP Credit Agreement as "Lenders" under, and as defined in, the DIP Credit Agreement (the

"DIP Lenders," and together with the DIP Agent and any other party to which DIP Obligations (as defined below) are owed, the "DIP Secured Parties"), and (z) any and all other Loan Documents (as defined in the DIP Credit Agreement, and together with the DIP Credit Agreement, collectively, the "DIP Loan Documents");

(ii)      grants to the DIP Agent, for the benefit of itself and the other DIP Secured Parties, (x) Liens on all of the DIP Collateral (as defined below and specifically excluding Avoidance Actions (as defined below)) pursuant to sections 364(c)(2), (c)(3) and (d) of the Bankruptcy Code, which Liens shall be senior to the Primed Liens (as defined below) and shall be junior solely to any valid, enforceable and non-avoidable Liens that are (A) in existence on the Petition Date, (B) either perfected as of the Petition Date or perfected subsequent to the Petition Date solely to the extent permitted by section 546(b) of the Bankruptcy Code, and (C) senior in priority to the Prepetition First Liens (as defined below) after giving effect to any intercreditor or subordination agreement (all such liens, collectively, the "Prepetition Prior Liens") and (y) pursuant to section 364(c)(1) of the Bankruptcy Code, superpriority administrative claims having recourse to all prepetition and postpetition property of the Debtors' estates, now owned or hereafter acquired (excluding Avoidance Actions (as defined below)), including any Debtors' rights under section 506(c) of the Bankruptcy Code and the proceeds thereof;

(iii)      authorizes the Debtors to use "cash collateral," as such term is defined in section 363 of the Bankruptcy Code (the "Cash Collateral"), including, without limitation, Cash Collateral in which the Prepetition Secured Parties (as defined below) and/or the DIP Secured Parties have a Lien or other interest, in each case whether existing on the Petition Date, arising pursuant to this Interim Order or otherwise, and provides the respective Prepetition Secured

Parties (as defined below) the Prepetition Secured Parties' Adequate Protection (as defined below) as set forth herein;

(iv)    vacates the automatic stay imposed by section 362 of the Bankruptcy Code solely to the extent necessary to implement and effectuate the terms and provisions of the DIP Loan Documents and this Interim Order;

(v)    authorizes the DIP Borrowers during the Interim Period (as defined below) to: (A) borrow an aggregate outstanding principal amount not to exceed $3,500,000 (unless the Interim Period Outside Date (as defined below) is extended by up to fourteen calendar days pursuant to Paragraph 2(c) hereof, in which case such amount shall not exceed the increased amount specified in Paragraph 2(c)) comprised of advances under the Revolver Facility and the face amount of Postpetition Letters of Credit, and (B) permit to remain outstanding, and fund draws under, the full amount of the LC Facility;

(vi)    schedules a final hearing on the DIP Motion to be held on or prior to the Interim Period Outside Date (the "Final Hearing") to consider entry of a final order which grants all of the relief requested in the DIP Motion on a final basis and which final order shall be in form and substance (including with respect to any subsequent modifications to the form or substance made in response to objections of other creditors or the Court) acceptable to the DIP Agent (the "Final Order"); and

(vii)    waives any applicable stay (including under Bankruptcy Rule 6004) and provides for immediate effectiveness of this Interim Order.

Having considered the DIP Motion, the DIP Credit Agreement, the Declaration of James Zielke in Support of First Day Motions (the "Zielke Declaration"), and the evidence submitted or proffered at the hearing on this Interim Order (the "Interim Hearing"); and notice of the DIP

Motion and the Interim Hearing having been adequate under the circumstances; an Interim Hearing having been held and concluded on December [13], 2013; and it appearing that approval of the interim relief requested in the DIP Motion is necessary to avoid immediate and irreparable harm to the Debtors pending the Final Hearing and otherwise is fair and reasonable and in the best interests of the Debtors, their creditors, their estates and all parties in interest, and is essential for the continued operation of the Debtors' business; and after due deliberation and consideration, and for good and sufficient cause appearing therefor:

**THE COURT MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:**

A.    **Petition Date**.  On December 12, 2013 (the "Petition Date"), each of the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for the District of Delaware (this "Court").  The Debtors have continued in the management and operation of their businesses and properties as debtors-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.  No statutory committee of unsecured creditors (if such committee is appointed, the "Committee"), trustee, or examiner has been appointed in the Cases.

B.    **Jurisdiction and Venue**.  This Court has core jurisdiction over the Cases, the DIP Motion and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157(b) and 1334.  Venue for the Cases and proceedings on the DIP Motion is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory predicates for the relief sought herein are sections 105, 361, 362, 363, 364, 507 and 552 of the Bankruptcy Code, Bankruptcy Rules 2002, 4001, 6004, and 9014 and the Local Rules.

C.    **Notice**.  The Interim Hearing is being held pursuant to the authorization of Bankruptcy Rule 4001.  Notice of the Interim Hearing and the emergency relief requested in the

DIP Motion has been provided by the Debtors, whether by facsimile, electronic mail, overnight courier or hand delivery, to certain parties in interest, including: (i) the Office of the United States Trustee for the District of Delaware (the "United States Trustee"), (ii) those entities or individuals included on the Debtors' list of 20 largest unsecured creditors on a consolidated basis, (iii) the Prepetition First Lien Secured Agent (as defined below), (iv) counsel to the Prepetition First Lien Secured Agent, (v) the DIP Agent, (vi) counsel to the DIP Agent, (vii) the Prepetition Second Lien Secured Agent (as defined below), and (viii) counsel to the Prepetition Second Lien Secured Agent. Under the circumstances, such notice of the DIP Motion, the relief requested therein and the Interim Hearing complies with Bankruptcy Rule 4001(b), (c) and (d) and the Local Rules, and no other notice need be provided for entry of this Interim Order.

D.    **Debtors' Stipulations Regarding the Prepetition First Lien Secured Credit Facility**.  Without prejudice to the rights of the Committee and other parties in interest solely to the extent set forth in Paragraph 7 below, the Debtors admit, stipulate, acknowledge, and agree (Paragraphs D and E hereof shall be referred to herein collectively as the "Debtors' Stipulations") as follows:

(i)    Prepetition First Lien Secured Credit Facility.  Pursuant to that certain Credit Agreement, dated as of March 19, 2012 (as amended, restated or otherwise modified from time to time prior to the Petition Date, the "Prepetition First Lien Secured Credit Agreement," and collectively with any other agreements executed or delivered in connection therewith, and all other "Loan Documents" as defined therein, each as may be amended, restated, supplemented, or otherwise modified from time to time, the "Prepetition First Lien Loan Documents"), among (a) the Persons designated as "Borrowers" on the signature pages thereto (collectively, the "Borrowers"), (b) GECC and the other financial institutions party thereto, as

"Lenders" (collectively, the "Prepetition First Lien Secured Lenders"), and (c) GECC, as agent (in such capacity, the "Prepetition First Lien Secured Agent" and, together with the Prepetition First Lien Secured Lenders and any other party to which Prepetition First Lien Obligations (as defined below) are owed, the "Prepetition First Lien Secured Parties"), the Prepetition First Lien Secured Parties agreed to extend certain loans and make other financial accommodations to, and issue letters of credit for the account of, the Borrowers.  Pursuant to a Guaranty and Security Agreement, dated as of March 19, 2012 (as amended, restated or otherwise modified from time to time prior to the Petition Date, the "Guaranty"), the Credit Parties under, and as defined in, the Prepetition First Lien Secured Credit Agreement (together with the Borrowers, the "Prepetition Credit Parties") unconditionally guaranteed the Borrowers' obligations under the Prepetition First Lien Loan Documents.  All liabilities and other obligations of the Debtors arising under the Prepetition First Lien Loan Documents and applicable law and all other "Obligations" (as defined in the Prepetition First Lien Secured Credit Agreement) shall collectively be referred to herein as the "Prepetition First Lien Obligations."

    (ii)  Prepetition First Liens and Prepetition Collateral.  Pursuant to the Collateral Documents (as defined in the Prepetition First Lien Secured Credit Agreement) (as such documents are amended, restated, supplemented, or otherwise modified from time to time prior to the Petition Date, the "Prepetition First Lien Collateral Documents"), by and among each of the Borrowers, the Prepetition Credit Parties, and the Prepetition First Lien Secured Agent, each Prepetition Credit Party granted to the Prepetition First Lien Secured Agent, for the benefit of itself and the other Prepetition First Lien Secured Parties, to secure the Prepetition First Lien Obligations, a first priority security interest in and continuing lien (the "Prepetition First Liens") on substantially all of such Prepetition Credit Party's assets and properties (including Cash

Collateral) and all proceeds, products, accessions, and profits thereof, in each case whether then owned or existing or thereafter acquired or arising. All "Collateral," as defined in the Prepetition First Lien Secured Credit Agreement, granted or pledged by the Prepetition Credit Parties pursuant to any Prepetition First Lien Collateral Document or any other Prepetition First Lien Loan Document shall collectively be referred to herein as the "Prepetition First Lien Collateral." As of the Petition Date, (I) the Prepetition First Liens (a) are valid, binding, enforceable, and perfected liens, (b) were granted to, or for the benefit of, the Prepetition First Lien Secured Parties for fair consideration and reasonably equivalent value, (c) are not subject to avoidance, recharacterization, or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law (except for the priming contemplated herein), and (d) are subject and subordinate only to (A) the DIP Liens (as defined below), (B) the Carve-Out (as defined below), and (C) the Prepetition Prior Liens (as defined below), and (II) (x) the Prepetition First Lien Obligations constitute legal, valid, and binding obligations of the applicable Debtors, enforceable in accordance with the terms of the applicable Prepetition First Lien Loan Documents (other than in respect of the stay of enforcement arising from section 362 of the Bankruptcy Code), (y) no setoffs, recoupments, offsets, defenses, or counterclaims to any of the Prepetition First Lien Obligations exist, and (z) no portion of the Prepetition First Lien Obligations or any transfers made to any or all of the Prepetition First Lien Secured Parties are subject to avoidance, recharacterization, recovery, subordination, attack, recoupment, offset, counterclaim, defense, or "claim" (as defined in the Bankruptcy Code) of any kind pursuant to the Bankruptcy Code or applicable non-bankruptcy law.

(iii)    Amounts Owed under Prepetition First Lien Loan Documents. As of the Petition Date, the Debtors owed the Prepetition First Lien Secured Parties, pursuant to the

Prepetition First Lien Loan Documents, without defense, counterclaim, or offset of any kind, in respect of loans made and letters of credit issued by the Prepetition First Lien Secured Parties: (a) an aggregate principal amount of not less than $65,250,000 with respect to Term Loans (as defined in the Prepetition First Lien Secured Credit Agreement), an aggregate principal amount of not less than $3,106,970.45 with respect to Revolving Loans (as defined in the Prepetition First Lien Secured Credit Agreement), and an aggregate face amount of $2,269,000 with respect to Prepetition Letters of Credit, *plus* (b) all (I) Bank Product Obligations, (II) obligations under any Secured Rate Contract, and (III) any other Obligations (each as defined in the Prepetition First Lien Secured Credit Agreement), *plus* (c) all accrued and hereafter accruing and unpaid interest thereon and any additional fees, expenses (including any reasonable attorneys', accountants', appraisers', and financial advisors' fees and expenses that are chargeable or reimbursable under the Prepetition First Lien Loan Documents), and other amounts now or hereafter due under the Prepetition First Lien Loan Documents and applicable law.

(iv)    Release of Claims.    Subject to the reservation of rights set forth in Paragraph 7 below, each Debtor and its estate shall be deemed to have forever waived, discharged, and released each of the Prepetition First Lien Secured Parties and their respective members, managers, equity security holders, affiliates, agents, attorneys, financial advisors, consultants, officers, directors, and employees (all of the foregoing, collectively, the "Prepetition First Lien Secured Party Releasees") of any and all "claims" (as defined in the Bankruptcy Code), counterclaims, causes of action (including, without limitation, causes of action in the nature of "lender liability"), defenses, setoff, recoupment, and/or other offset rights against any and all of the Prepetition First Lien Secured Party Releasees, whether arising at law or in equity, relating to and/or otherwise in connection with the Prepetition First Lien Loan Documents, the

Prepetition First Lien Obligations, the Prepetition First Liens, or the debtor-creditor relationship between any of the Prepetition First Lien Secured Parties, on the one hand, and any of the Prepetition Credit Parties and/or their affiliates, on the other hand, including, without limitation, (I) any recharacterization, subordination, avoidance, or other claim arising under or pursuant to section 105 or chapter 5 of the Bankruptcy Code or under any other similar provisions of applicable non-bankruptcy law and (II) any right, basis or action to challenge or object to the amount, validity, or enforceability of the Prepetition First Lien Obligations or any transfers made on account of the Prepetition First Lien Obligations, or the validity, enforceability, priority, or non-avoidability of the Prepetition First Liens.

(v)     Intercreditor Agreement.  The Prepetition First Lien Secured Agent, the Prepetition Credit Parties, and the Prepetition Second Lien Secured Agent (as defined below) are parties to that certain Intercreditor Agreement, dated as of March 19, 2012 (as amended, restated, supplemented, or otherwise modified in accordance with its terms, the "Intercreditor Agreement"), which sets forth subordination and other provisions governing the relative priorities and rights of the Prepetition First Lien Obligations and the Prepetition First Liens, on the one hand, and the Prepetition Second Lien Obligations and the Prepetition Second Liens (each term as defined below), on the other hand.  The Debtors admit, stipulate, and agree that the Intercreditor Agreement was entered into in good faith and is fair and reasonable to the parties thereto and enforceable in accordance with the terms thereof.

E.      **Debtors' Stipulations Regarding the Prepetition Second Lien Secured Credit Facility**.  Without prejudice to the rights of the Committee and other parties in interest to the extent set forth in Paragraph 7 below, the Debtors further admit, stipulate, acknowledge, and agree as follows:

(i)      Prepetition Second Lien Secured Credit Facility.  Pursuant to that certain Credit Agreement, dated as of March 19, 2012 (as amended, restated or otherwise modified from time to time prior to the Petition Date, the "Prepetition Second Lien Secured Credit Agreement," collectively with any other agreements executed or delivered in connection therewith, each as may be amended, restated, supplemented, or otherwise modified from time to time, the "Prepetition Second Lien Loan Documents" and, together with the Prepetition First Lien Loan Documents, collectively the "Prepetition Secured Loan Documents"), among (a) the Persons designated as "Borrowers" on the signature pages thereto (the "Prepetition Second Lien Borrowers"), (b) the other Loan Parties (as defined therein) party thereto, (c) the financial institutions party thereto, as "Lenders" (collectively, the "Prepetition Second Lien Secured Lenders"), and (d) Cerberus Business Finance, LLC, as agent (in such capacity, the "Prepetition Second Lien Secured Agent" and, together with the Prepetition Second Lien Secured Lenders and any other party to which Prepetition Second Lien Obligations (as defined below) are owed, the "Prepetition Second Lien Secured Parties" and, together with the Prepetition First Lien Secured Parties, the "Prepetition Secured Parties"), the Prepetition Second Lien Secured Parties agreed to extend certain loans and other financial accommodations to the Prepetition Second Lien Borrowers.  All liabilities and other obligations of the Debtors arising under the Prepetition Second Lien Loan Documents and applicable law and all other "Obligations" (as defined in the Prepetition Second Lien Loan Documents) shall collectively be referred to herein as the "Prepetition Second Lien Obligations" and, together with the Prepetition First Lien Obligations, the "Prepetition Secured Obligations."

(ii)      Prepetition Second Liens and Prepetition Collateral.  The Prepetition Second Lien Obligations are secured by Liens granted to the Prepetition Second Lien Secured

Agent, for the benefit of the Prepetition Second Lien Secured Parties (the "Prepetition Second Liens" and, together with the Prepetition First Liens, the "Prepetition Liens"), on substantially all of the Debtors' assets and properties (including Cash Collateral) as set forth in the Prepetition Second Lien Loan Documents, whether then owned or existing or thereafter acquired or arising. All "Collateral," as defined in the Prepetition Second Lien Secured Credit Agreement, granted or pledged by the Debtors pursuant to any Prepetition Second Lien Loan Documents shall collectively be referred to herein as the "Prepetition Second Lien Collateral" and, together with the Prepetition First Lien Collateral, the "Prepetition Collateral." As of the Petition Date, (I) the Prepetition Second Liens (a) are valid, binding, enforceable, and perfected liens, (b) were granted to, or for the benefit of, the Prepetition Second Lien Secured Parties for fair consideration and reasonably equivalent value, (c) are not subject to avoidance, recharacterization, or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law (except for the priming contemplated herein and as otherwise permitted under the Intercreditor Agreement), and (d) are subject and subordinate only to (A) the DIP Liens (as defined below), (B) the Carve-Out (as defined below), (C) the First Lien Adequate Protection Replacement Liens (as defined below), (D) the Prepetition First Liens, and (E) the Prepetition Prior Liens, and (II) (x) the Prepetition Second Lien Obligations constitute legal, valid, and binding obligations of the applicable Debtors, enforceable in accordance with the terms of the applicable Prepetition Second Lien Loan Documents (other than in respect of the stay of enforcement arising from section 362 of the Bankruptcy Code), (y) no setoffs, recoupments, offsets, defenses, or counterclaims to any of the Prepetition Second Lien Obligations exist, and (z) no portion of the Prepetition Second Lien Obligations or any transfers made to any or all of the Prepetition Second Lien Secured Parties are subject to avoidance, recharacterization,

recovery, subordination, attack, recoupment, offset, counterclaim, defense, or "claim" (as defined in the Bankruptcy Code) of any kind pursuant to the Bankruptcy Code or applicable non-bankruptcy law, except for the priming contemplated herein and as otherwise permitted by the Intercreditor Agreement.

(iii)    Amounts Owed under Prepetition Second Lien Loan Documents. As of the Petition Date, the Debtors owed the Prepetition Second Lien Secured Parties, pursuant to the Prepetition Second Lien Loan Documents, without defense, counterclaim, or offset of any kind, an aggregate principal amount of not less than $39,850,066.35, *plus* all prepetition accrued or, subject to section 506(b) of the Bankruptcy Code, postpetition accruing and unpaid interest thereon and any additional reasonable fees and expenses (including any reasonable attorneys', accountants', appraisers', and financial advisors' fees and expenses that are chargeable or reimbursable under the Prepetition Second Lien Loan Documents), and other amounts now or hereafter due under the Prepetition Second Lien Loan Documents and applicable law.

(iv)    Release of Claims. Subject to the Intercreditor Agreement and the reservation of rights set forth in Paragraph 7 below, each Debtor and its estate shall be deemed to have forever waived, discharged, and released each of the Prepetition Second Lien Secured Parties and their respective affiliates, members, managers, equity security holders, agents, attorneys, financial advisors, consultants, officers, directors, and employees (all of the foregoing, collectively, the "Prepetition Second Lien Secured Party Releasees") of any and all "claims" (as defined in the Bankruptcy Code), counterclaims, causes of action (including causes of action in the nature of "lender liability"), defenses, setoff, recoupment, and/or other offset rights against any and all of the Prepetition Second Lien Secured Party Releasees, whether arising at law or in equity, relating to and/or otherwise in connection with the Prepetition Second Lien Loan

Documents, Prepetition Second Lien Obligations and the Prepetition Second Liens, or the debtor creditor relationship between any of the Prepetition Second Lien Secured Parties, on the one hand, and any of the Prepetition Second Lien Borrowers and/or their affiliates, on the other hand, including, without limitation, (I) any recharacterization, subordination, avoidance, or other claim arising under or pursuant to section 105 or chapter 5 of the Bankruptcy Code or under any other similar provisions of applicable non-bankruptcy law and (II) any right, basis, or action to challenge or object to the amount, validity, or enforceability of the Prepetition Second Lien Obligations or any transfers made on account of the Prepetition Second Lien Obligations, or the validity, enforceability, priority, or non-avoidability of the Prepetition Second Liens.

        F.        **Findings Regarding the DIP Facility**.

        (i)        <u>Need for Postpetition Financing</u>.  The Debtors have an immediate need to obtain the DIP Facility and use Cash Collateral to, among other things, permit the orderly continuation of the operation of their businesses, to maintain business relationships with vendors, suppliers, and customers, to make payroll, to make capital expenditures, to satisfy other working capital and operation needs, to complete the Debtors' marketing and sale process and to otherwise preserve and maximize the value of the Debtors' estates.  The Debtors' access to sufficient working capital and liquidity through the use of Cash Collateral and borrowing under the DIP Facility is vital to a successful sale and/or to otherwise preserve the enterprise value of the Debtors' estates.  Immediate and irreparable harm will be caused to the Debtors and their estates if immediate financing is not obtained and permission to use Cash Collateral is not granted, in each case in accordance with the terms of this Interim Order and the DIP Loan Documents.

(ii)      No Credit Available on More Favorable Terms.  As set forth in the

DIP Motion and in the Zielke Declaration in support thereof, the Debtors have determined, at the

time hereof, that no acceptable financing on more favorable terms is available.  The Debtors are

unable to obtain unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code as

an administrative expense.   The Debtors are also unable to obtain secured credit on terms

acceptable to the Debtors allowable only under sections 364(c)(1), 364(c)(2), or 364(c)(3) of the

Bankruptcy Code.  The Debtors are unable to obtain secured credit under section 364(d)(1) of the

Bankruptcy Code without (a) granting to the DIP Secured Parties the rights, remedies, privileges,

benefits, and protections provided herein and in the DIP Loan Documents, including, without

limitation, the DIP Liens and the DIP Superpriority Claims (each as defined below), (b) allowing

the DIP Secured Parties to provide (or to permit to remain outstanding, as applicable) the loans,

letters of credit, and other financial accommodations under the DIP Facility on the terms set forth

herein and in the DIP Loan Documents (all of the foregoing described in clauses (a) and (b)

above, including, without limitation, the DIP Liens and the DIP Superpriority Claims,

collectively, the "DIP Protections"), and (c) providing the respective Prepetition Secured Parties

the adequate protection more fully described in Paragraphs 4 and 5 below.

G.      **Adequate Protection for Prepetition Secured Parties**.  Based on the

record at the Interim Hearing, the Prepetition First Lien Secured Parties and the Prepetition

Second Lien Secured Parties have negotiated in good faith regarding the Debtors' use of the

Prepetition Collateral (including the Cash Collateral) to fund the administration of the Debtors'

estates and continued operation of their businesses.  The Prepetition First Lien Secured Agent

(on behalf of the Prepetition First Lien Secured Parties) and the Prepetition Second Lien Secured

Agent (on behalf of the Prepetition Second Lien Secured Parties) have each agreed to permit the

Debtors to use the Prepetition Collateral, including the Cash Collateral, during the Interim Period (as defined below), subject to the terms and conditions set forth herein, including the protections afforded a party acting in "good faith" under section 364(e) of the Bankruptcy Code. In addition, the DIP Facility contemplated hereby provides for a priming of the Prepetition Liens pursuant to section 364(d) of the Bankruptcy Code. The Prepetition Secured Parties are entitled to adequate protection as set forth herein, including, with respect to the Prepetition First Lien Secured Parties, the Prepetition First Lien Roll-Up (as defined below) upon entry of a Final Order, pursuant to sections 361, 362, 363, and 364 of the Bankruptcy Code. Based on the DIP Motion and the record presented to the Court at the Interim Hearing, the terms of the proposed adequate protection arrangements, use of the Cash Collateral, and the DIP Facility contemplated hereby are fair and reasonable, reflect the Debtors' prudent exercise of business judgment, and constitute reasonably equivalent value and fair consideration for the consent of the Prepetition First Lien Secured Parties and the Prepetition Second Lien Secured Parties.

H.        **Section 552**. In light of the subordination of their Liens and superpriority administrative claims to (i) the Carve-Out (as defined below) in the case of the DIP Secured Parties, (ii) the Carve-Out, the DIP Superpriority Claims (as defined below) and the DIP Liens in the case of the Prepetition First Lien Secured Parties, and (iii) the Carve-Out, the DIP Superpriority Claims, the DIP Liens, First Lien Adequate Protection Superpriority Claims, the First Lien Adequate Protection Replacement Liens, and the Prepetition First Liens in the case of the Prepetition Second Lien Secured Parties, each of the DIP Secured Parties and the respective Prepetition Secured Parties is entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code, and, subject to the entry of the Final Order, the "equities of the case" exception shall not apply.

I.      **Business Judgment and Good Faith Pursuant to Section 364(e)**.

(i)      Based on the record at the Interim Hearing, the DIP Agent and the other DIP Secured Parties are willing to provide the DIP Facility to the Debtors, and the Prepetition First Lien Secured Parties and the Prepetition Second Lien Secured Parties are willing to consent to the Debtors' use of Cash Collateral, in each case during the Interim Period in accordance with, and pursuant to, this Interim Order and the DIP Loan Documents, as applicable.

(ii)      Based on the record at the Interim Hearing, the terms and conditions of the DIP Facility as set forth in the DIP Loan Documents and this Interim Order, and the fees, expenses and other charges paid and to be paid thereunder or otherwise in connection therewith, are fair, reasonable, and the best available under the circumstances, and the Debtors' agreement to the terms and conditions of the DIP Loan Documents and to the payment of such fees reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties.  Such terms and conditions are supported by reasonably equivalent value and fair consideration.

(iii)      Based on the record at the Interim Hearing, the DIP Facility and the DIP Loan Documents were negotiated in good faith and at arm's length among the Debtors and the DIP Secured Parties with the assistance and counsel of their respective advisors, and all of the DIP Obligations shall be deemed to have been extended by the DIP Secured Parties and their affiliates for valid business purposes and uses and in good faith, as that term is used in section 364(e) of the Bankruptcy Code, and in express reliance upon the protections offered by section 364(e) of the Bankruptcy Code or this Interim Order, and the DIP Liens, the DIP Superpriority Claims and the other DIP Protections shall be entitled to the full protection of section 364(e) of the Bankruptcy Code and this Interim Order in the event this Interim Order or any other order or

any provision hereof or thereof is vacated, reversed, amended, or modified, on appeal or otherwise.

J.      **Relief Essential; Best Interest**.  For the reasons stated above, the Debtors have requested immediate entry of this Interim Order pursuant to Bankruptcy Rules 4001(b)(2), 4001(c)(2), and the Local Rules.  Absent granting the relief set forth in this Interim Order, the Debtors' estates and their ability to successfully sell their assets or otherwise preserve the enterprise value of the Debtors' estates will be immediately and irreparably harmed. Consummation of the DIP Facility and authorization of the use of Cash Collateral in accordance with this Interim Order and the DIP Loan Documents is therefore in the best interests of the Debtors' estates and consistent with their fiduciary duties.

NOW, **THEREFORE**, on the DIP Motion and the record before this Court with respect to the DIP Motion, and with the consent of the Debtors, the Prepetition First Lien Secured Agent (on behalf of the Prepetition First Lien Secured Parties), the Prepetition Second Lien Secured Agent (on behalf of the Prepetition Second Lien Secured Parties) and the DIP Agent (on behalf of the DIP Secured Parties) to the form and entry of this Interim Order, and good and sufficient cause appearing therefor,

**IT IS ORDERED** that:

1.      **Motion Granted**.  The DIP Motion is hereby granted in accordance with the terms and conditions set forth in this Interim Order and the DIP Loan Documents.  Any objections to the DIP Motion with respect to the entry of this Interim Order that have not been withdrawn, waived, or settled are hereby denied and overruled.

2.      **DIP Loan Documents and DIP Protections**.

(a)    Approval of DIP Loan Documents.    The Debtors are expressly and immediately authorized to establish the DIP Facility, to execute, deliver, and perform under the DIP Loan Documents and this Interim Order, to incur the DIP Obligations (as defined below) in accordance with, and subject to, the terms of this Interim Order and the DIP Loan Documents, and to execute, deliver, and perform under all other instruments, certificates, agreements, and documents which may be required or necessary for the performance by the Debtors under the DIP Loan Documents and the creation and perfection of the DIP Liens described in, and provided for, by this Interim Order and the DIP Loan Documents.    The Debtors are hereby authorized to do and perform all acts and pay the principal, interest, fees, expenses, and other amounts described in the DIP Loan Documents as such become due pursuant to the DIP Loan Documents and this Interim Order, including, without limitation, all closing fees, administrative fees, commitment fees, and reasonable attorneys', financial advisors', and accountants' fees, and disbursements arising under the DIP Loan Documents and this Interim Order, which amounts shall not be subject to further approval of this Court, shall be non-refundable and shall not otherwise be subject to Challenge (as defined below) pursuant to Paragraph 7 hereof or otherwise.    Upon their execution and delivery, the DIP Loan Documents shall represent valid and binding obligations of the applicable Debtors enforceable against such Debtors in accordance with their terms.    Each officer of a Debtor is authorized to execute and deliver each of the DIP Loan Documents, such execution and delivery to be conclusive evidence of such officer's respective authority to act in the name of and on behalf of the Debtors.

(b)    DIP Obligations.    For purposes of this Interim Order, the term "DIP Obligations" shall mean all amounts and other obligations and liabilities owing by the Debtors under the DIP Loan Documents (including, without limitation, all "Obligations" as defined in the

DIP Credit Agreement) and shall include, without limitation, the principal of, interest on, fees, costs, expenses, and other charges owing in respect of, such amounts (including, without limitation, any reasonable attorneys', accountants', financial advisors', and other fees, costs, and expenses that are chargeable or reimbursable under the DIP Loan Documents and/or this Interim Order), and any obligations in respect of indemnity claims, whether contingent or otherwise. In addition, notwithstanding anything to the contrary herein or in any Prepetition First Lien Loan Document or DIP Loan Document, from and after the entry of this Interim Order, the DIP Obligations (and the definition of "DIP Obligations" used in this Interim Order) shall include (i) subject to entry of a Final Order, the aggregate amount of all draws made on Prepetition Letters of Credit that are funded by the Prepetition First Lien Secured Parties from and after the Petition Date in accordance with the Prepetition First Lien Loan Documents and (ii) the aggregate amount of all draws made on Postpetition Letters of Credit that are funded by the DIP Secured Parties from and after the Petition Date in accordance with the DIP Loan Documents.

(c)    Authorization to Incur DIP Obligations.    To enable the Debtors to continue to operate their business, during the period from the entry of this Interim Order through and including the earliest to occur of (i) the entry of the Final Order, (ii) January 14, 2014, and (iii) the Termination Declaration Date (as defined below), in each case unless extended by up to fourteen calendar days by written agreement of the Debtors and the DIP Agent without further order of this Court (such earliest date, as may be extended pursuant to this Paragraph 2(c), the "Interim Period Outside Date," and the period from the entry of this Interim Order through and including Interim Period Outside Date, the "Interim Period"), and subject to the terms and conditions of this Interim Order and the DIP Loan Documents, including, without limitation, the Budget Covenants as defined and contained in Paragraph 2(e) below, the DIP Borrowers are

hereby authorized to (x) borrow under the Revolver Facility and issue Postpetition Letters of Credit in an aggregate outstanding principal amount comprising Revolver Facility Advances and Postpetition Letters of Credit not to exceed $3,500,000, unless the Interim Period Outside Date is extended by not less than eight calendar days and not more than fourteen calendar days in accordance with this Paragraph, in which case such aggregate maximum amount shall not exceed $4,000,000, and (y) permit to remain outstanding, and fund draws under, the full amount of the LC Facility (following the entry of the Final Order, the DIP Borrowers' authority to incur further DIP Obligations, if any, will be governed by the terms of such Final Order).  Any amounts repaid under the Revolver Facility may be reborrowed, subject to the terms of the DIP Loan Documents and this Interim Order.  For the avoidance of doubt, the Interim Period cannot be extended by more than fourteen calendar days without the prior written consent of the DIP Agent, DIP Lenders constituting "Required Lenders" under, and as defined in, the DIP Credit Agreement (the "**Requisite DIP Lenders**"), the Prepetition First Lien Secured Agent and further order of this Court.  Upon entry of a Final Order: (i) the Debtors shall, subject to the terms of the DIP Loan Documents and such Final Order, be entitled to borrow all amounts under the DIP Facility and use Cash Collateral to fund the Debtors' working capital and other general corporate needs and pay such other amounts required or allowed to be paid pursuant to the DIP Loan Documents, the Final Order, and any other orders of this Court, and (ii) all then outstanding Prepetition First Lien Obligations shall be automatically converted to DIP Obligations.

       (d)    Budget.  Attached hereto as Exhibit A is a 13-week cash flow budget (the "Initial Approved Budget") which reflects on a line-item basis the Debtors' (i) weekly projected cash receipts, (ii) weekly projected disbursements (including ordinary course operating expenses, bankruptcy-related expenses under the Cases (including the fees and expenses of the Debtors'

Professionals (as defined below)) and outstanding Prepetition Letters of Credit that are funded postpetition, capital expenditures, asset sales, issuances of any Postpetition Letter of Credit, including the fees relating thereto, and budgeted fees and expenses of the DIP Agent and DIP Lenders (including counsel and financial advisors therefor), the Prepetition First Lien Secured Parties (including counsel and financial advisors therefor), the Prepetition Second Lien Secured Agent (including counsel and financial advisors therefor), and any other fees and expenses relating to the DIP Facility), (iii) the sum of weekly unused Revolver Facility availability under the DIP Facility plus unrestricted cash on hand (collectively, "Aggregate Liquidity"), and (iv) the weekly outstanding principal balance of the DIP Loans and aggregate face amount of all Postpetition Letters of Credit under the DIP Facility. Commencing on January 10, 2014 and continuing every fourth Friday thereafter (i.e., every four weeks), the Debtors shall prepare and deliver to the DIP Agent, DIP Lenders, Prepetition First Lien Secured Agent, and Prepetition Second Lien Secured Agent an updated "rolling" 13-week cash flow budget, which, once approved in writing by the DIP Agent and Requisite DIP Lenders, each in their respective sole discretion, shall supplement and replace the Initial Approved Budget or Supplemental Approved Budget, as applicable, then in effect (each such updated budget that has been approved in writing by the DIP Agent and Requisite DIP Lenders, a "Supplemental Approved Budget") without further notice, motion, or Court order; provided, however, that unless and until the DIP Agent and Requisite DIP Lenders have approved such updated budget, the Debtors shall remain subject to and be governed by the terms of the Initial Approved Budget or Supplemental Approved Budget, as applicable, then in effect, and none of the DIP Secured Parties and Prepetition Secured Parties shall, as applicable, have any obligation to fund to such updated "rolling budget" or permit the use of Cash Collateral with respect thereto, as applicable. Commencing on

December 20, 2013 and continuing every Friday thereafter (i.e., every week), the Debtors shall provide to the DIP Agent, DIP Lenders, Prepetition First Lien Secured Agent, and Prepetition Second Lien Secured Agent (x) a variance report/reconciliation report certified by the Chief Financial Officer of the Debtors, in form acceptable to the DIP Agent, setting forth (A) the actual cash receipts, expenditures, disbursements, and outstanding Revolver Facility balance (separating out the amount of the Prepetition First Lien Roll-Up during the Interim Period) of the Debtors for such immediately preceding fiscal week (including any "stub week" that includes the Petition Date) and cumulatively on a line-item basis and the Aggregate Liquidity as of the end of such week and cumulatively, (B) the variance in dollar amounts of the actual expenditures, disbursements, and outstanding Revolver Facility balance for each week and cumulatively from those budgeted amounts for the corresponding week and cumulatively as reflected in the Approved Budget, and (C) any updates to the projections set forth in the thirteenth week of the Initial Approved Budget or Supplemental Approved Budget, as applicable, then in effect (provided, however, that no such updates shall become part of the Approved Budget unless and until they are made part of a Supplemental Approved Budget in accordance with the terms of this Interim Order), and (y) a certificate signed by the Chief Financial Officer of the Debtors, in form acceptable to the DIP Agent, certifying whether the Debtors are in full compliance with the Budget Covenants for the applicable testing period ending on the Tuesday of the week such certificate is delivered in accordance herewith.  The aggregate, without duplication, of all items in the Initial Approved Budget and any Supplemental Approved Budgets shall constitute the "Approved Budget."  Notwithstanding anything to the contrary in this Interim Order, the reasonable professional fees, costs and expenses of the DIP Agent and other DIP Secured Parties (including, without limitation, counsel and other advisors therefor) and the Prepetition First Lien

Secured Parties (including, without limitation, counsel and other advisors therefor) (with respect to the Prepetition First Lien Secured Parties, during the Interim Period with all future periods being subject to entry of a Final Order), respectively, shall be due, payable and paid in accordance with the terms of this Interim Order notwithstanding any budgeted amounts for such fees, costs and expenses set forth in the Approved Budget.

        (e)    <u>Budget Covenants</u>.  The Debtors shall only incur DIP Obligations and expend Cash Collateral and other DIP Collateral proceeds in accordance with the specific purposes, and at the specific time periods, set forth in the Approved Budget, subject to the following permitted variances:  (i) (a) for each of the first two weeks following the Petition Date (including the "stub week" that includes the Petition Date)[2], the sum of all actual cash receipts of the Debtors for the week ending the immediately preceding Tuesday and the prior week (if applicable) covered by the Approved Budget shall exceed 80% of the sum of the "Total Receipts" line item in the Approved Budget for the corresponding testing period set forth in the Approved Budget; (b) for the third week following the Petition Date, the sum of all actual cash receipts of the Debtors for the week ending the immediately preceding Tuesday and all prior weeks covered by the Approved Budget shall exceed 85% of the sum of the "Total Receipts" line item in the Approved Budget for the corresponding testing period set forth in the Approved Budget; and (c) for the fourth week following the Petition Date and for each week thereafter, the sum of all actual cash receipts of the Debtors for the week ending the immediately preceding Tuesday and all prior weeks covered by the Approved Budget shall exceed 90% of the sum of the "Total Receipts" line item in the Approved Budget for the corresponding testing period set forth in the Approved Budget; and (ii) (a) for each of the first three weeks ending on the

---

[2] All references to "weeks" in Paragraph 2 of this Interim Order shall include the "stub week" including the Petition Date.

successive Tuesdays following the Petition Date, the sum of all actual "Total Receipts" (as calculated in the Approved Budget) less the sum of actual "Total Operating Disbursements" of the Debtors (as calculated in the Approved Budget) for the week ending on the immediately preceding Tuesday and all prior weeks covered by the Approved Budget shall exceed zero; (b) for the fourth week following the Petition Date, the sum of all actual "Total Receipts" (as calculated in the Approved Budget) less the sum of actual "Total Operating Disbursements" of the Debtors (as calculated in the Approved Budget) for the week ending on the immediately preceding Tuesday and all prior weeks covered by the Approved Budget shall exceed negative $1,000,000; (c) for each of the fifth, sixth and seventh weeks following the Petition Date, the sum of all actual "Total Receipts" (as calculated in the Approved Budget) less the sum of actual "Total Operating Disbursements" of the Debtors (as calculated in the Approved Budget) for the week ending on the immediately preceding Tuesday and all prior weeks covered by the Approved Budget shall exceed zero; (d) for each of the six weeks thereafter, the sum of all actual Total Receipts less the sum of actual Total Operating Disbursements of the Debtors for the week ending on the immediately preceding Tuesday and all prior weeks covered by the Approved Budget shall exceed negative $1,000,000; and (e) for each week thereafter, the sum of all actual Total Receipts less the sum of actual Total Operating Disbursements of the Debtors for the week ending on the immediately preceding Tuesday and all prior weeks covered by the Approved Budget shall exceed $0.  In addition to the foregoing, the Debtors shall be prohibited from making, incurring or agreeing to incur, any of the following: (i) any capital expenditures other than   maintenance capital expenditures and capital expenditures for remodeling of existing locations (such permitted expenditures, collectively, the "Permitted Capital Expenditures"), provided, that (w) the aggregate amount of Permitted Capital Expenditures from the Petition

Date through December 31, 2013 shall at no time exceed $1,000,000, (x) the aggregate amount of Permitted Capital Expenditures from the Petition Date through January 21, 2014 shall at no time exceed $1,500,000, (y) the aggregate amount of Permitted Capital Expenditures from the Petition Date through February 25, 2014 shall at no time exceed $2,000,000, and (z) the aggregate amount of Permitted Capital Expenditures from the Petition Date through the DIP Revolving Termination Date (as defined in the DIP Credit Agreement) shall at no time exceed $2,500,000; and (ii) utility deposits in an aggregate amount greater than $1,500,000 without the prior written consent of the DIP Agent. For the avoidance of doubt, the first testing period for each of the foregoing budget tests will not include any prepetition period. Notwithstanding the foregoing, in no event shall the outstanding Revolver Facility exceed the commitment cap described above and in no event shall the fees and expenses of the Debtors' Professionals exceed the budgeted amounts in the Approved Budget. The foregoing budget-related covenants are collectively referred to herein as the "Budget Covenants."

(f)    Termination Events. The occurrence of any of the following events, unless waived in writing by the DIP Agent, Requisite DIP Lenders, the Prepetition First Lien Secured Agent and Prepetition First Lien Secured Lenders constituting "Required Lenders" under the Prepetition First Lien Secured Credit Agreement ("Requisite Prepetition First Lien Lenders"), in their respective sole discretion (except solely with respect to the events specified in clause (i) below, unless waived in writing by the Prepetition Second Lien Secured Agent and Prepetition Second Lien Secured Lenders constituting "Required Lenders" under the Prepetition Second Lien Secured Credit Agreement ("Requisite Prepetition Second Lien Lenders") in their respective sole discretion), shall constitute a termination event under this Interim Order and the DIP Loan Documents (each, a "Termination Event"):

(i)        (A) the reversal, vacatur, or modification of any provision of this Interim Order adversely affecting the rights of the Prepetition Second Lien Secured Parties without the express prior written consent of the Prepetition Second Lien Secured Agent or (B) the failure by the Debtors to timely perform, in any respect, any of their obligations under this Interim Order owed to the Prepetition Second Lien Secured Parties; provided, however, that in no event shall any modification of the respective Sale Process Deadlines by ten (10) business days or less constitute an adverse effect on the Prepetition Second Lien Secured Parties resulting in a Termination Event under this clause (i) (notwithstanding any provision to the contrary herein, the Prepetition Second Lien Secured Parties shall only have the right to call a Termination Event under this clause (i));

(ii)       the occurrence of any Event of Default (as defined in the DIP Credit Agreement), or the occurrence of any Default and the passage of any applicable notice or cure period set forth in the DIP Credit Agreement regardless of any acts or omissions of the DIP Secured Parties that would otherwise have resulted in such Default not becoming an Event of Default (the occurrence of any such event referenced in this clause (i), a "DIP Default Termination Event");

(iii)      (A) the failure by the Debtors to timely perform, in any respect, any of the terms, provisions, conditions, covenants, or other obligations under either this Interim Order or the Bid Procedures Order (as defined below), or (B) the modification of any Bid Procedures (as defined in the Bid Procedures Order) without the prior written consent of the DIP Agent and Prepetition First Lien Secured Agent, notwithstanding that such modification may be permitted by the Bid Procedures Order, if the result of such modification is exclusion of any bidder who would otherwise be a Qualified Bidder (as defined in the Bid Procedures Order entered pursuant to Paragraph 2(f)(iv)(c) herein);

(iv)      the failure of the Debtors to timely comply with any of the following sale process milestones (collectively, the "Sale Process Deadlines") or the failure of the Debtors to incorporate such milestones into a bid procedures motion which shall be in form and substance reasonably acceptable to the DIP Agent (the "Bid Procedures Motion") and a bid procedures order which shall be in form and substance acceptable to the DIP Agent and Requisite DIP Lenders ("Bid Procedures Order"):

    a)        on or prior to December 17, 2013, the Debtors shall file the Bid Procedures Motion and proposed form of Bid Procedures Order;

    b)        the hearing on the Bid Procedures Motion shall be completed on or prior to January 7, 2014;

    c)        the Bid Procedures Order shall have been entered by this Court on or prior to January 8, 2014;

    d)        on or prior to February 25, 2014, all qualified bids (pursuant to which potential bidders shall have unconditionally waived or satisfied all financing and diligence outs) shall be due (which bid deadline shall not be

extended without the consent of the DIP Agent and Requisite DIP Lenders) (the "Qualified Bid Deadline");

e)    the auction shall, if necessary, be completed on or prior to March 4, 2014;

f)    the hearing to approve the sale to the winning bidder shall have concluded on or prior to March 6, 2014 (the proceeds of such sale shall be used to repay in cash all DIP Obligations and Prepetition First Lien Obligations on the closing thereof or such sale shall otherwise be on terms, and pursuant to definitive documentation, acceptable to the DIP Agent, Requisite DIP Lenders, Prepetition First Lien Secured Agent and Requisite Prepetition First Lien Lenders) (such sale, an "Acceptable Sale");

g)    an order approving an Acceptable Sale shall have been entered by this Court on or prior to March 7, 2014; and

h)    on or prior to March 26, 2014, such Acceptable Sale shall have been consummated pursuant to definitive documentation acceptable in form and substance to the DIP Agent and Requisite DIP Lenders;

(v)    the failure of the Debtors to diligently market and sell their assets in accordance with the Sale Process Deadlines and the other terms and conditions of the Bid Procedures Order; and

(vi)    the failure of the Debtors to obtain the prior written consent of the DIP Agent (in accordance with the DIP Credit Agreement), Requisite DIP Lenders, and the Prepetition First Lien Secured Agent (in accordance with the Prepetition First Lien Secured Credit Agreement) to the Debtors' (a) entering into any stalking horse bid or similar agreement to purchase all or a material portion of the Debtors' assets, and/or (b) agreeing to provide any proposed stalking horse bidder with a break-up fee, expense reimbursement or any other bid protections.

(g)    Interest, Fees, Costs and Expenses.    The DIP Obligations shall bear interest at the rates, and be due and payable (and paid), as set forth in, and in accordance with the terms and conditions of, this Interim Order and the DIP Loan Documents, in each case without further notice, motion, or application to, order of, or hearing before, this Court.  The Debtors shall pay on demand all fees, costs, expenses (including reasonable out-of-pocket legal and other professional fees and expenses of the DIP Agent and DIP Lenders) and other charges in accordance with the terms of the DIP Loan Documents.  Notwithstanding any provision herein to the contrary, all fees described in the DIP Credit Agreement are fully earned, all paid portions of

such fees are finally allowed and non-refundable, all unpaid portions of such fees shall be immediately payable by the Debtors upon entry of this Interim Order, and the payment of such fees, costs, and expenses shall not be subject to Challenge pursuant to Paragraph 7 hereof or otherwise.

(h)     Use of DIP Facility Proceeds and Proceeds of DIP Collateral.  The DIP Borrowers shall use the proceeds of all DIP Collateral (as defined below) and Revolver Facility advances (including Postpetition Letter of Credit issuances) solely in accordance with this Interim Order and the applicable provisions of the DIP Loan Documents.  Without limiting the foregoing, the Debtors shall not be permitted to make any payments on account of any prepetition debt or obligation prior to the effective date of a chapter 11 plan or plans with respect to any of the Debtors, except with respect to (i) the Prepetition Secured Obligations as set forth in this Interim Order and a Final Order; (ii) as provided in the orders granting the relief requested in the various motions filed by the Debtors on the Petition Date, which orders shall be in form and substance acceptable to the DIP Agent; (iii) as provided in other motions, orders, and requests for relief, each in form and substance acceptable to the DIP Agent prior to such motion, order, or request for such relief being filed; or (iv) as otherwise provided in the DIP Credit Agreement.

(i)     Conditions Precedent.  The DIP Secured Parties and Prepetition First Lien Secured Parties each have no obligation to extend credit under the DIP Facility or permit use of any DIP Collateral proceeds, including Cash Collateral, as applicable, during the Interim Period unless and until all conditions precedent to the extension of credit and/or use of DIP Collateral or proceeds thereof under the DIP Loan Documents and this Interim Order have been satisfied in

full or waived by the requisite DIP Secured Parties and the Prepetition First Lien Secured Parties in accordance with the DIP Loan Documents and this Interim Order.

    (j)  <u>DIP Liens</u>.  As security for the DIP Obligations, the following security interests and liens are hereby granted to the DIP Agent, for its own benefit and the ratable benefit of the DIP Secured Parties, on all property of the Debtors, now existing or hereinafter acquired, including, without limitation, all cash and cash equivalents (whether maintained with the DIP Agent or otherwise), and any investment in such cash or cash equivalents, money, inventory, goods, accounts receivable, contract rights, other rights to payment, intercompany loans and other investments, investment property, contracts, contract rights, properties, plants, equipment, machinery, general intangibles, payment intangibles, accounts, deposit accounts, documents, instruments, chattel paper, securities (whether or not marketable), franchise rights, documents of title, letters of credit, letter of credit rights, supporting obligations, leases and other interests in leaseholds (provided however, that to the extent that any lease prohibits the granting of a lien thereon, or otherwise prohibits hypothecation of the leasehold interest, then in such event the DIP Agent shall be granted only a lien on the proceeds of sale or other disposition of such leasehold interests), real property, fixtures, patents, copyrights, trademarks, trade names, other intellectual property, intellectual property licenses, capital stock of subsidiaries, tax and other refunds, insurance proceeds, commercial tort claims, Postpetition Transfer Avoidance Actions (as defined below) and proceeds relating thereto, rights under section 506(c) of the Bankruptcy Code, all other Collateral (as defined in the DIP Loan Documents), and all other "property of the estate" (as defined in section 541 of the Bankruptcy Code) of any kind or nature, real or personal, tangible, intangible, or mixed, now existing or hereafter acquired or created, and all rents, products, substitutions, accessions, profits, replacements, and cash and non-cash proceeds

of all of the foregoing, excluding only Avoidance Actions other than Postpetition Transfer

Avoidance Actions as provided below (all of the foregoing collateral collectively referred to as

the "DIP Collateral," and all such Liens granted to the DIP Agent for the benefit of the DIP

Secured Parties pursuant to this Interim Order and the DIP Loan Documents, the "DIP Liens"):

(I)    pursuant to section 364(c)(2) of the Bankruptcy Code, a first priority Lien on all unencumbered DIP Collateral, including, without limitation, the Debtors' claims and causes of action under section 549 of the Bankruptcy Code relating to postpetition transfers and the proceeds relating thereto (the "Postpetition Transfer Avoidance Actions"), which, for the avoidance of doubt, shall not include any other claims and causes of action of the Debtors (excluding Postpetition Transfer Avoidance Claims) under sections 502(d), 544, 545, 547, 548, 550 and 553 of the Bankruptcy Code and any other avoidance or similar action under the Bankruptcy Code or similar state law and the proceeds thereof ("Avoidance Actions"), whether received by judgment, settlement, or otherwise;

(II)    pursuant to section 364(c)(3) of the Bankruptcy Code, a junior Lien on all DIP Collateral that is subject solely to the Prepetition Prior Liens, other than liens which are expressly stated to be primed by the DIP Liens described in clause (III) below; and

(III)    pursuant to section 364(d)(1) of the Bankruptcy Code, a first priority, senior priming lien on all DIP Collateral (including, without limitation, Cash Collateral) that is senior to the   Adequate Protection Replacement Liens (as defined below) and senior and priming to (x) the Prepetition Liens and (y) any Liens that are junior to the Prepetition Liens and the Adequate Protection Replacement Liens, after giving effect to any intercreditor or subordination agreements (the liens referenced in clauses (x) and (y), collectively, the "Primed Liens"); provided, however, that the liens described in this clause (III) shall be junior solely to the Carve-Out and the Prepetition Prior Liens.

(k)    DIP Lien Priority.  Notwithstanding anything to the contrary contained in

this Interim Order or the DIP Loan Documents, for the avoidance of doubt, the DIP Liens

granted to the DIP Agent for the ratable benefit of the DIP Secured Parties shall in each and

every case be first priority senior liens that (i) are subject only to the Prepetition Prior Liens, and

to the extent provided in the provisions of this Interim Order and the DIP Loan Documents, shall

also be subject to the Carve-Out, and (ii) except as provided in sub-clause (i) of this subsection

(k), are senior to all prepetition and postpetition liens of any other person or entity (including,

without limitation, the Primed Liens and the Adequate Protection Replacement Liens). The DIP

Liens and the DIP Superiority Claims (as defined below) (A) shall not be subject to sections

506(c), 510, 549, 550, or 551 of the Bankruptcy Code or the "equities of the case" exception of

section 552 of the Bankruptcy Code, (B) shall not be subordinate to, or *pari passu* with, (x) any

lien that is avoided and preserved for the benefit of the Debtors and their estates under section

551 of the Bankruptcy Code or (y) any intercompany or affiliate liens or claims of the Debtors,

and (C) shall be valid and enforceable against any trustee or any other estate representative

appointed or elected in the Cases, upon the conversion of any of the Cases to a case under

chapter 7 of the Bankruptcy Code or in any other proceedings related to any of the foregoing

(each, a "Successor Case"), and/or upon the dismissal of any of the Cases to the maximum extent

permitted by law.

          (l)     Enforceable Obligations. The DIP Loan Documents shall constitute and

evidence the valid and binding DIP Obligations of the Debtors, which DIP Obligations shall be

enforceable against the Debtors, their estates and any successors thereto (including, without

limitation, any trustee or other estate representative in any Successor Case), and their creditors,

in accordance with their terms. No obligation, payment, transfer, or grant of security under the

DIP Credit Agreement, the other DIP Loan Documents, or this Interim Order shall be stayed,

restrained, voidable, avoidable, or recoverable under the Bankruptcy Code or under any

applicable law (including, without limitation, under sections 502(d), 544, 547, 548, or 549 of the

Bankruptcy Code or under any applicable state Uniform Fraudulent Transfer Act, Uniform

Fraudulent Conveyance Act, or similar statute or common law), or subject to any avoidance,

reduction, setoff, recoupment, offset, recharacterization, subordination (whether equitable,

contractual, or otherwise), counterclaim, cross-claim, defense, or any other challenge under the Bankruptcy Code or any applicable law or regulation by any person or entity.

      (m)    <u>Superpriority Administrative Claim Status</u>. In addition to the DIP Liens granted herein, effective immediately upon entry of this Interim Order, all of the DIP Obligations shall constitute allowed superpriority administrative claims pursuant to section 364(c)(1) of the Bankruptcy Code, which shall have priority, subject only to the payment of the Carve-Out, over all administrative expense claims, adequate protection and other diminution claims (including the Adequate Protection Superpriority Claims (as defined below)), unsecured claims, and all other claims against the Debtors, now existing or hereafter arising, of any kind or nature whatsoever, including, without limitation, administrative expenses or other claims of the kinds specified in, or ordered pursuant to, sections 105, 326, 328, 330, 331, 503(a), 503(b), 506(c), 507(a), 507(b), 546, 726, 1113, and 1114 or any other provision of the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy, or attachment (the "<u>DIP Superpriority Claims</u>"). The DIP Superpriority Claims shall, for purposes of section 1129(a)(9)(A) of the Bankruptcy Code, be considered administrative expenses allowed under section 503(b) of the Bankruptcy Code, shall be against each Debtor on a joint and several basis, and shall be payable from and have recourse to all prepetition and postpetition property of the Debtors and all proceeds thereof. Other than as provided in the DIP Credit Agreement and this Interim Order with respect to the Carve-Out, no costs or expenses of administration, including, without limitation, professional fees allowed and payable under sections 328, 330, and 331 of the Bankruptcy Code and professional fees of the Prepetition Second Lien Secured Parties described in Paragraph 5(c) hereof, or otherwise, that have been or may be incurred in these proceedings, or in any Successor Cases, and no priority claims are, or

will be, senior to, prior to, or on a parity with the DIP Superpriority Claims or the DIP Obligations, or with any other claims of the DIP Secured Parties arising hereunder.    For avoidance of doubt, recoveries from Avoidance Actions shall not be subject to the DIP Superpriority Claims.

3.    **Authorization to Use Cash Collateral and Proceeds of the DIP Facility**. Subject to, and solely in accordance with, the terms and conditions of this Interim Order and the DIP Loan Documents, including without limitation, the Budget Covenants set forth in Paragraph 2(e) hereof and Paragraph 15 hereof, (a) the Debtors are authorized to use proceeds of credit extended under the DIP Facility, and (b) the Debtors are authorized to use Cash Collateral.

4.    **Adequate Protection for Prepetition First Lien Secured Parties**.    In consideration for the use of the Prepetition Collateral (including Cash Collateral) and the priming of the Prepetition First Liens, the Prepetition First Lien Secured Parties shall receive the following adequate protection (collectively referred to as the "Prepetition First Lien Secured Parties' Adequate Protection"):

(a)    Prepetition First Lien Roll-Up.    Subject to and only upon entry of a Final Order, all Prepetition First Lien Obligations, including on account of Prepetition Letters of Credit, shall immediately, automatically, and irrevocably be deemed to have been converted into DIP Obligations and incurred under the DIP Facility (the "Prepetition First Lien Roll-Up"); provided, however, that such "rolled up" Prepetition First Lien Obligations shall continue to bear interest at the default rate set forth in the Prepetition First Lien Secured Credit Agreement and shall be secured by both the Prepetition First Liens and the DIP Liens.

(b)    First Lien Adequate Protection Replacement Liens.    To the extent there is a diminution in value of the interests of the Prepetition First Lien Secured Parties in the

Prepetition Collateral (including Cash Collateral) from and after the Petition Date resulting from the use, sale, or lease by the Debtors of the applicable Prepetition Collateral (including Cash Collateral), the granting of the DIP Superpriority Claims, the granting of the DIP Liens, the subordination of the Prepetition First Liens thereto and to the Carve-Out, the imposition or enforcement of the automatic stay of section 362(a) of the Bankruptcy Code or otherwise ("Diminution in Prepetition First Lien Collateral Value"), the Prepetition First Lien Secured Agent, for the benefit of all the Prepetition First Lien Secured Parties, is hereby granted, subject to the terms and conditions set forth below, pursuant to sections 361, 363(e), and 364 of the Bankruptcy Code, Liens upon all of the DIP Collateral, except Avoidance Actions other than Postpetition Transfer Avoidance Actions (such adequate protection replacement liens, the "First Lien Adequate Protection Replacement Liens"), which First Lien Adequate Protection Replacement Liens on such DIP Collateral shall be subject and subordinate only to the DIP Liens, the Prepetition Prior Liens, and the Carve-Out and shall be senior in priority to the Prepetition First Liens, the Second Lien Adequate Protection Replacement Liens (as defined below), and the Prepetition Second Liens.  The First Lien Adequate Protection Replacement Liens and the First Lien Adequate Protection Superpriority Claims (as defined below) (A) shall not be subject to sections 510, 549, 550, or 551 of the Bankruptcy Code or, subject to entry of the Final Order, section 506(c) of the Bankruptcy Code or the "equities of the case" exception of section 552 of the Bankruptcy Code, (B) shall be senior in priority and right of payment to (x) any lien that is avoided and preserved for the benefit of the Debtors and their estates under section 551 of the Bankruptcy Code or (y) any intercompany or affiliate liens or claims of the Debtors, and (C) shall be valid and enforceable against any trustee or any other estate

representative appointed in the Cases or any Successor Cases, and/or upon the dismissal of any of the Cases.

(c)     First Lien Adequate Protection Superpriority Claims.  To the extent of Diminution in Value of the Prepetition First Lien Collateral, the Prepetition First Lien Secured Parties are hereby further granted allowed superpriority administrative claims (such adequate protection superpriority claims, the "First Lien Adequate Protection Superpriority Claims"), pursuant to section 507(b) of the Bankruptcy Code, with priority over all administrative expense claims and unsecured claims against the Debtors or their estates, now existing or hereafter arising, of any kind or nature whatsoever, including, without limitation, administrative expenses of the kind specified in or ordered pursuant to sections 105, 326, 328, 330, 331, 503(a), 503(b), 506(c), 507(a), 507(b), 546(c), 546(d), 726 (to the extent permitted by law), 1113, and 1114 and any other provision of the Bankruptcy Code, junior only to the DIP Superpriority Claims and the Carve-Out to the extent provided herein and in the DIP Loan Documents, and payable from and having recourse to all of the DIP Collateral; provided, however, that the Prepetition First Lien Secured Parties shall not receive or retain any payments, property, or other amounts in respect of the First Lien Adequate Protection Superpriority Claims unless and until all DIP Obligations have been Paid in Full (as defined below).  Subject to the relative priorities set forth above, the Adequate Protection Superpriority Claims against each Debtor shall be against each Debtor on a joint and several basis.  For purposes of this Interim Order, the terms "Paid in Full," "Repaid in Full," "Repay in Full," and "Payment in Full" shall mean, with respect to any referenced DIP Obligations, Prepetition First Lien Obligations and/or Prepetition Second Lien Obligations, (i) the indefeasible payment in full in cash of such obligations, (ii) the termination of all credit commitments under the DIP Loan Documents, Prepetition First Lien Loan Documents and/or

Prepetition Second Lien Loan Documents, as applicable, and (iii) the absence of any contingent indemnification claim arising from any pending or potential Challenge.  For avoidance of doubt, recoveries from Avoidance Actions shall not be subject to the First Lien Adequate Protection Superpriority Claims.

(d)    <u>Further Adequate Protection.</u>  As further Adequate Protection, the Debtors (A) have committed, as set forth in this Interim Order, to timely comply with the Sale Process Deadlines and (B) shall simultaneously provide copies of any reports sent to the DIP Secured Parties or the Prepetition Second Lien Secured Parties as may be required under this Interim Order or the DIP Credit Agreement to the Prepetition First Lien Secured Parties.

(e)    <u>Interest and Professional Fees.</u>  As further adequate protection, and without limiting any rights of the Prepetition First Lien Secured Parties under section 506(b) of the Bankruptcy Code which are hereby preserved, and in consideration, and as a requirement, for obtaining the consent of the Prepetition First Lien Secured Parties to the entry of this Interim Order and the Debtors' consensual use of Cash Collateral as provided herein, the Debtors shall (i) pay or reimburse currently the Prepetition First Lien Secured Parties for any and all of their accrued and past-due fees, costs, expenses, and charges to the extent, and at the times, payable under the Prepetition First Lien Loan Documents, (ii) on the last day of each calendar month commencing after the Petition Date, pay to the Prepetition First Lien Secured Agent for prompt distribution to the applicable Prepetition First Lien Secured Parties any and all of the interest accruing on the Prepetition First Lien Obligations under the Prepetition First Lien Secured Credit Agreement (and in the case of the first month after the Petition Date, all accrued and unpaid prepetition interest shall also be due and payable hereunder) at the default rate provided for in the Prepetition First Lien Secured Credit Agreement, and (iii) pay currently all reasonable out-of-

pocket fees, costs, and expenses of the Prepetition First Lien Secured Parties (including without limitation reasonable attorneys' fees and costs and reasonable consulting, accounting, appraisal, investment banking and similar professional fees and charges) in accordance with the Prepetition First Lien Secured Loan Documents, in the case of each of sub-clauses (i), (ii), and (iii) above, all whether accrued prepetition or postpetition and whether or not budgeted in the Approved Budget, and without further notice (except as provided in Paragraph 20(b) below with respect to postpetition professional fees, costs, and expenses), motion, or application to, order of, or hearing before, this Court; provided that to the extent the amounts described in this Paragraph exceed the amounts included in the Approved Budget (on a cumulative basis), such excess shall be paid no later than the DIP Revolving Termination Date (as defined in the DIP Credit Agreement).

(f)    Consent to Priming and Adequate Protection.  The Prepetition First Lien Secured Agent, on behalf of the Prepetition First Lien Secured Parties, consents to the Prepetition First Lien Secured Parties' Adequate Protection and the priming provided for herein; provided, however, that such consent of the Prepetition First Lien Secured Agent to the priming of the Prepetition First Liens, the use of Cash Collateral, and the sufficiency of the Prepetition First Lien Secured Parties' Adequate Protection provided for herein is expressly conditioned upon the entry of this Interim Order, and such consent shall not be deemed to extend to any other Cash Collateral usage or other replacement financing or debtor-in-possession financing other than the DIP Facility provided under the DIP Loan Documents; and provided, further, that such consent shall be of no force and effect in the event this Interim Order is not entered or is entered and subsequently reversed, modified, stayed, or amended (unless such reversal, modification,

stay, or amendment is acceptable to the Prepetition First Lien Secured Agent) or the DIP Loan Documents and DIP Facility as set forth herein are not approved.

(g)    Right to Credit Bid.    Without limiting any the rights of any DIP Secured Parties or Prepetition First Lien Secured Parties under applicable law, each of the DIP Agent (on behalf of the DIP Secured Parties) and the Prepetition First Lien Secured Agent (on behalf of the Prepetition First Lien Secured Parties) or their respective assignees, designees, or successors, shall automatically be deemed a "qualified bidder" with respect to any disposition of DIP Collateral, and subject to a Final Order, shall have the right (unless this Court for cause orders otherwise after notice and a hearing upon request of any party in interest prior to February 25, 2014 (i.e., the stated Qualified Bid Deadline)) to "credit bid" up to the full amount of the DIP Obligations and the Prepetition First Lien Obligations with the consent of Requisite DIP Lenders and Requisite Prepetition First Lien Lenders, respectively (including the DIP Superpriority Claims and the First Lien Adequate Protection Superpriority Claims, as applicable, to the extent such claims have any value), during any disposition of all or any portion of the DIP Collateral or Prepetition Collateral, as applicable (in all cases excluding sales in the Debtors' ordinary course of business in accordance with this Interim Order and the DIP Loan Documents), or any deposit in connection with such sale, including, without limitation, sales occurring pursuant to section 363 of the Bankruptcy Code or included as part of any reorganization plan subject to confirmation under section 1129(b)(2)(A)(iii) of the Bankruptcy Code; provided, however, that neither the DIP Agent nor the Prepetition First Lien Secured Agent (nor their respective assignees, designees, or successors, as applicable) shall be subject to any generally applicable bid deadline, and instead shall be permitted to submit their respective bids at any time at least two (2) Business Days prior to any auction held in accordance with the Bid Procedures Order.    The

01:14595301.2                                39

DIP Agent and the Prepetition First Lien Secured Agent have the absolute right to assign, transfer, sell, or otherwise dispose of their rights to credit bid, except as prohibited by the DIP Loan Documents or Prepetition First Lien Secured Loan Documents, as applicable.

5.    **Adequate Protection for Prepetition Second Lien Secured Parties**.    In consideration for the use of the Prepetition Collateral (including Cash Collateral) and the priming of the Prepetition Second Liens, the Prepetition Second Lien Secured Parties shall receive the following adequate protection (collectively referred to as the "Prepetition Second Lien Secured Parties' Adequate Protection" and, together with the Prepetition First Lien Secured Parties' Adequate Protection, the "Prepetition Secured Parties' Adequate Protection"):

(a)    Second Lien Adequate Protection Replacement Liens.    To the extent there is a diminution in value of the interests of the Prepetition Second Lien Secured Parties in the Prepetition Second Lien Collateral (including Cash Collateral) from and after the Petition Date resulting from the use, sale, or lease by the Debtors of the Prepetition Second Lien Collateral (including Cash Collateral), the granting of the DIP Superpriority Claims and the First Lien Adequate Protection Superpriority Claims, the granting of the priming DIP Liens and the granting of the First Lien Adequate Protection Replacement Liens, the subordination of the Prepetition Second Liens thereto and to the Carve-Out, and the imposition or enforcement of the automatic stay of section 362(a) of the Bankruptcy Code or otherwise ("Diminution in Value of the Prepetition Second Lien Collateral," and collectively with the Diminution in Value of the Prepetition First Lien Collateral, "Diminution in Value"), the Prepetition Second Lien Secured Agent, for the benefit of all the Prepetition Second Lien Secured Parties, is hereby granted, subject to the terms and conditions set forth below, pursuant to sections 361, 363(e), and 364 of the Bankruptcy Code, Liens upon all of the DIP Collateral, except Avoidance Actions other than

Postpetition Transfer Avoidance Actions (such adequate protection replacement liens, the "Second Lien Adequate Protection Replacement Liens" and, together with the First Lien Adequate Protection Replacement Liens, the "Adequate Protection Replacement Liens"), which Second Lien Adequate Protection Replacement Liens on such DIP Collateral shall be subject and subordinate only to the DIP Liens, the Prepetition Prior Liens, the Carve-Out, the First Lien Adequate Protection Replacement Liens, and the Prepetition First Liens and shall be senior in priority to the Prepetition Second Liens.  The Second Lien Adequate Protection Replacement Liens and the Second Lien Adequate Protection Superpriority Claims (as defined below) (A) shall not be subject to sections 510, 549, 550, or 551 of the Bankruptcy Code or, subject to entry of the Final Order, section 506(c) of the Bankruptcy Code or the "equities of the case" exception of section 552 of the Bankruptcy Code, (B) shall be senior in priority and right of payment to (x) any lien that is avoided and preserved for the benefit of the Debtors and their estates under section 551 of the Bankruptcy Code or (y) any intercompany or affiliate liens or claims of the Debtors, and (C) shall be valid and enforceable against any trustee or any other estate representative appointed in the Cases or any Successor Cases, and/or upon the dismissal of any of the Cases.

(b)     Second Lien Adequate Protection Superpriority Claims.  To the extent of Diminution in Value of the Prepetition Second Lien Collateral, the Prepetition Second Lien Secured Parties are hereby further granted allowed superpriority administrative claims (such adequate protection superpriority claims, the "Second Lien Adequate Protection Superpriority Claims" and, together with the First Lien Adequate Protection Superpriority Claims, the "Adequate Protection Superpriority Claims"), pursuant to section 507(b) of the Bankruptcy Code, with priority over all administrative expense claims and unsecured claims against the

Debtors or their estates, now existing or hereafter arising, of any kind or nature whatsoever, including, without limitation, administrative expenses of the kind specified in or ordered pursuant to sections 105, 326, 328, 330, 331, 503(a), 503(b), 506(c), 507(a), 507(b), 546(c), 546(d), 726 (to the extent permitted by law), 1113, and 1114 and any other provision of the Bankruptcy Code, junior only to the DIP Superpriority Claim, the Carve-Out, the First Lien Adequate Protection Superpriority Claims, and the Prepetition First Lien Obligations as provided herein, and payable from and having recourse to all of the DIP Collateral; provided, however, that the Prepetition Second Lien Secured Parties shall not, without the prior written consent of the DIP Agent and Prepetition First Lien Secured Agent, receive or retain any payments, property, or other amounts in respect of the Second Lien Adequate Protection Superpriority Claims unless and until (y) all DIP Obligations have been Paid in Full, and (z) the Prepetition First Lien Obligations have been Paid in Full.  Subject to the relative priorities set forth above, the Second Lien Adequate Protection Superpriority Claims against each Debtor shall be against each Debtor on a joint and several basis.  For avoidance of doubt, recoveries from Avoidance Actions shall not be subject to the Second Lien Adequate Protection Superpriority Claims.

(c)    Professional Fees.  As further adequate protection, and without limiting any rights of the Prepetition Second Lien Secured Parties under section 506(b) of the Bankruptcy Code which are hereby preserved, and in consideration, and as a requirement, for obtaining the consent of the Prepetition Second Lien Secured Parties to the entry of this Interim Order, the entry of a Final Order that is consistent with this Order as provided in Paragraph 5(e), and the Debtors' consensual use of Cash Collateral as provided herein and therein, the Debtors shall pay the reasonable fees, costs, expenses, and charges of the Prepetition Second Lien Secured Agent's professionals incurred from and after December 1, 2013, in an aggregate amount not to exceed

$400,000; provided, however, any and all such payments shall be conditioned upon the entry of a Final Order and no such payments shall be made during the Interim Period. All parties reserve all rights to assert that any of the foregoing payments may be recharacterized as principal repayments on account of the Prepetition Second Lien Obligations. All defenses of the Prepetition Second Lien Secured Agent to any effort to recharacterize such payments are expressly reserved. Nothing in this subparagraph (c) is intended, nor shall be deemed, to be a cap on what the Prepetition Second Lien Secured Agent may assert as part of a prepetition claim under the Prepetition Second Lien Loan Documents.

(d)     Further Adequate Protection. As further Adequate Protection, the Debtors (A) have committed, as set forth in this Interim Order, to timely comply with the Sale Process Deadlines and (B) shall simultaneously provide copies to the Prepetition Second Lien Secured Agent of any reports sent to the DIP Secured Parties or the Prepetition First Lien Secured Parties as may be required under this Interim Order or the DIP Credit Agreement.

(e)     Consent to Priming and Adequate Protection. During the Interim Period, the Prepetition Second Lien Secured Agent and the other Prepetition Second Lien Secured Parties consent to the Prepetition Second Lien Secured Parties' Adequate Protection and the priming provided for herein; provided, however, that such consent of the Prepetition Second Lien Secured Parties to the priming of their Prepetition Second Liens, the use of Cash Collateral, and the sufficiency of the Prepetition Second Lien Secured Parties' Adequate Protection provided for herein is expressly conditioned upon the entry of this Interim Order, and such consent shall not be deemed to extend to any other replacement financing or debtor-in-possession financing other than the DIP Facility provided under the DIP Loan Documents; and provided, further, that such consent shall be of no force and effect in the event this Interim Order

is not entered or is entered and subsequently reversed, modified, stayed, or amended (unless such reversal, modification, stay, or amendment is acceptable to the Prepetition Second Lien Secured Agent) or the DIP Loan Documents and DIP Facility as set forth herein are not approved; and provided, further, that in the event of the occurrence of a Termination Event, nothing herein shall alter the burden of proof set forth in the applicable provisions of the Bankruptcy Code at any hearing concerning the continued use of Prepetition Collateral (including Cash Collateral) by the Debtors.  The Prepetition Second Lien Secured Agent and the other Prepetition Second Lien Secured Parties also consent to the entry of a Final Order (and to the use of Prepetition Collateral, including Cash Collateral, and to the priming and adequate protection in favor of the Prepetition Second Lien Secured Parties provided for therein) consistent with this Interim Order; provided, however, that (i) such consent of the Prepetition Second Lien Secured Parties to the priming of their Prepetition Second Liens, the use of Cash Collateral, and the sufficiency of the Prepetition Second Lien Secured Parties' adequate protection provided for in such Final Order is expressly conditioned upon the entry of such Final Order; and (ii) any change between this Interim Order and any Final Order that is adverse to any DIP Secured Parties and/or Prepetition First Lien Secured Parties shall not constitute an inconsistency between this Interim Order and the Final Order solely for purposes of the Prepetition Second Lien Secured Parties' consent to entry of such Final Order).

(f)     Right to Credit Bid.  Without limiting any rights of any DIP Secured Parties or Prepetition First Lien Secured Parties under applicable law, the Prepetition Second Lien Secured Agent (on behalf of the Prepetition Second Lien Secured Parties) or its assignee, designee, or successor, shall automatically be deemed a "qualified bidder" with respect to any disposition of Prepetition Collateral and/or DIP Collateral, and subject to a Final Order, shall

have the right (unless this Court for cause orders otherwise after notice and a hearing upon request of any party in interest prior to February 25, 2014 (i.e., the stated Qualified Bid Deadline)) to "credit bid" up to the amount of the Prepetition Second Lien Obligations with the consent of Requisite Prepetition Second Lien Lenders (including its Second Lien Adequate Protection Superpriority Claim to the extent such Second Lien Adequate Protection Superpriority Claim has any value) during any disposition of all or any portion of the Prepetition Collateral and DIP Collateral (in the case of the DIP Collateral, only to the extent of the value of the Second Lien Adequate Protection Superpriority Claim resulting from a postpetition Diminution in Value of the Prepetition Second Lien Collateral as provided herein) (in all cases excluding sales in the Debtors' ordinary course of business in accordance with this Interim Order and the DIP Loan Documents), or any deposit in connection with such sale, including, without limitation, sales occurring pursuant to section 363 of the Bankruptcy Code or included as part of any reorganization plan subject to confirmation under section 1129(b)(2)(A)(iii) of the Bankruptcy Code; provided, that any such "credit bid" provides for Payment in Full of all DIP Obligations and Prepetition First Lien Obligations at the closing of such transaction unless otherwise agreed by the DIP Agent (with the consent of the Requisite DIP Lenders) and the Prepetition First Lien Secured Agent (with the consent of the Requisite Prepetition First Lien Lenders), in their sole and absolute discretion.  The Prepetition Second Lien Secured Agent has the absolute right to assign, transfer, sell, or otherwise dispose of its right to credit bid at the direction of the Prepetition Second Lien Secured Parties.

(g)    Section 507(b) Reservation.  Under the circumstances and given that the above-described adequate protection is consistent with the Bankruptcy Code, including section 506(b) thereof, the Court finds that the adequate protection provided herein is reasonable and

sufficient to protect the interests of the respective Prepetition Secured Parties. Nothing herein shall impair or modify the application of section 507(b) of the Bankruptcy Code in the event that the adequate protection provided herein to the Prepetition Secured Parties is insufficient to compensate for any Diminution in Value of each of their respective interests in the Prepetition Collateral during the Cases or any Successor Cases; provided, however, any such additional section 507(b) claims shall be subject to the same relative priority as such party's Adequate Protection Superpriority Claims, as provided in this Interim Order, and the terms of the Intercreditor Agreement.

6.    **Automatic Postpetition Lien Perfection**.  This Interim Order shall be sufficient and conclusive evidence of the validity, enforceability, perfection, priority and non-avoidability of the DIP Liens and the Adequate Protection Replacement Liens without the necessity of (a) filing or recording any financing statement, deed of trust, mortgage, control agreement, or other instrument or document which may otherwise be required under the law of any jurisdiction or (b) taking any other action to validate or perfect the DIP Liens and the Adequate Protection Replacement Liens or to entitle the DIP Liens and the Adequate Protection Replacement Liens to the priorities granted herein.  Notwithstanding the foregoing, each of the DIP Agent and the Prepetition Secured Parties (in the latter case, solely with respect to the Adequate Protection Replacement Liens) may, each in their sole discretion, enter into and file, as applicable, financing statements, mortgages, security agreements, notices of liens, and other similar documents, and is hereby granted relief from the automatic stay of section 362 of the Bankruptcy Code in order to do so, and all such financing statements, mortgages, security agreements, notices, and other agreements or documents shall be deemed to have been filed or recorded at the time and on the Petition Date.  The applicable Debtors shall execute and deliver to the DIP

Agent, the Prepetition First Lien Secured Agent, and/or the Prepetition Second Lien Secured Agent, as applicable, all such financing statements, mortgages, notices, and other documents as such parties may reasonably request to evidence and confirm the contemplated priority of, the DIP Liens and the Adequate Protection Replacement Liens, as applicable, granted pursuant hereto. Without limiting the foregoing, each of the DIP Agent, the Prepetition First Lien Secured Agent, and the Prepetition Second Lien Secured Agent, each in its discretion, may file a photocopy of this Interim Order as a financing statement with any recording officer designated to file financing statements or with any registry of deeds or similar office in any jurisdiction in which any Debtor has real or personal property, and in such event, the subject filing or recording officer shall be authorized to file or record such copy of this Interim Order. Subject to the entry of the Final Order, any provision of any lease, loan document, easement, use agreement, proffer, covenant, license, contract, organizational document, or other instrument or agreement that requires the payment of any fees or obligations to any governmental entity or non-governmental entity in order for the Debtors to pledge, grant, mortgage, sell, assign, or otherwise transfer any fee or leasehold interest or the proceeds thereof or other DIP Collateral shall have no force or effect with respect to the Liens on such leasehold interests or other applicable DIP Collateral or the proceeds of any assignment and/or sale thereof by any Debtor, in favor of the DIP Secured Parties in accordance with the terms of the DIP Loan Documents and this Interim Order or in favor of the Prepetition Secured Parties in accordance with this Interim Order, as applicable. To the extent that the Prepetition First Lien Secured Agent is the secured party under any security agreement, mortgage, leasehold mortgage, landlord waiver, financing statement, or account control agreements, listed as loss payee under any of the Debtors' insurance policies, or is the secured party under any of the Prepetition Secured Loan Documents, the DIP Agent shall also be

deemed to be the secured party under such account control agreements, loss payee under the
Debtors' insurance policies, and the secured party under each such Prepetition Secured Loan
Document, shall have all rights and powers attendant to that position (including, without
limitation, rights of enforcement), and shall act in that capacity and distribute any proceeds
recovered or received first, for the benefit of the DIP Secured Parties in accordance with the DIP
Loan Documents, second, subsequent to Payment in Full of all DIP Obligations, for the benefit
of the Prepetition First Lien Secured Parties, and third, subsequent to Payment in Full of all
Prepetition First Lien Obligations, for the benefit of the Prepetition Second Lien Secured Parties.
The Prepetition First Lien Secured Agent shall serve as agent for the DIP Agent for purposes of
perfecting its respective liens on all DIP Collateral that is of a type such that perfection of a lien
therein may be accomplished only by possession or control by a secured party.

7.    **Reservation of Certain Third Party Rights and Bar of Challenges and
Claims**.  The Debtors' Stipulations shall be binding upon the Debtors and their estates in all
circumstances upon entry of this Interim Order.  The Debtors' Stipulations shall be binding upon
all other parties in interest, including the Committee, unless such Committee or any other party
in interest (including any Chapter 11 trustee) other than the Debtors *first*, commences, by the
earliest of (x) if a Committee is appointed, sixty (60) calendar days from the formation of the
Committee, (y) if no Committee is formed, with respect to all parties in interest with standing
other than the Debtors, seventy-five (75) calendar days following the date of entry of the Interim
Order, or (z) February 25, 2014 (i.e., the stated Qualified Bid Deadline) (such time period
established by the earliest of clauses (x), (y) and (z), as the same may be extended in accordance
with this Paragraph 7, shall be referred to as the "Challenge Period," and the date that is the next
calendar day after the termination of the Challenge Period in the event that either (i) no

Challenge is raised during the Challenge Period or (ii) with respect only to those parties who commence a Challenge during the Challenge Period, such Challenge is fully and finally adjudicated, shall be referred to as the "Challenge Period Termination Date"), (A) a contested matter, adversary proceeding, or other action or "claim" (as defined in the Bankruptcy Code) challenging or otherwise objecting to the admissions, stipulations, findings, or releases included in the Debtors' Stipulations, or (B) a contested matter, adversary proceeding, or other action against any or all of the Prepetition Secured Parties in connection with or related to the Prepetition Secured Obligations (including, without limitation, Prepetition First Lien Obligations converted into DIP Obligations pursuant to the Prepetition First Lien Roll-Up), or the actions or inactions of any of the Prepetition Secured Parties arising out of or related to the Prepetition Secured Obligations or otherwise, including, without limitation, any claim against any or all of the Prepetition Secured Parties in the nature of a "lender liability" cause of action, setoff, counterclaim, or defense to the Prepetition Secured Obligations (including, but not limited to, those under sections 506, 544, 547, 548, 549, 550, and/or 552 of the Bankruptcy Code or by way of suit against any of the Prepetition Secured Parties) (clauses (A) and (B) collectively, the "Challenges" and, each individually, a "Challenge"), and *second*, obtains a final, non-appealable order in favor of such party in interest sustaining any such Challenge in any such contested matter, adversary proceeding, or other action to which such Challenge is subject.  If a Chapter 7 trustee or a Chapter 11 trustee is appointed during the Challenge Period, the Challenge Period Termination Date with respect to such trustee only, shall be the later of (i) the last day of the Challenge Period and (ii) the date that is twenty (20) days after the date on which such trustee is appointed.    Except as otherwise expressly provided herein, upon the Challenge Period Termination Date and for all purposes in these Cases and any Successor Cases, (i) all payments

made to or for the benefit of the Prepetition Secured Parties pursuant to, or otherwise authorized by, this Interim Order or otherwise (whether made prior to, on, or after the Petition Date) shall be indefeasible and not be subject to counterclaim, set-off, subordination, recharacterization, defense, or avoidance, (ii) any and all such Challenges by any party in interest shall be deemed to be forever released, waived, and barred; (iii) the Prepetition First Lien Obligations shall be deemed to be a fully allowed secured claim within the meaning of section 506 of the Bankruptcy Code (which claim and liens shall have been deemed satisfied in full by the repayment of the Prepetition First Lien Obligations as provided herein), (iv) the Prepetition Second Lien Obligations shall be deemed to be a fully allowed secured claim (subject to the provisions set forth in this Interim Order), (v) the Debtors' Stipulations, including the release provisions therein, shall be binding on all parties in interest, including any Committee. Notwithstanding the foregoing, to the extent any Challenge is asserted in accordance with this Interim Order, the Debtors' Stipulations and the other provisions in clauses (i) through (v) in the immediately preceding sentence shall nonetheless remain binding and preclusive on any Committee and on any other party in interest from and after the Challenge Period Termination Date, except to the extent that such Debtors' Stipulations or the other provisions in clauses (i) through (v) of the immediately preceding sentence were successfully challenged in such adversary proceeding, contested matter, or other action. The Challenge Period may be extended only with the written consent of the Prepetition First Lien Secured Agent (with the consent of Requisite Prepetition First Lien Lenders) or the Prepetition Second Lien Secured Agent, as applicable and in their sole discretion. Notwithstanding any provision to the contrary herein, nothing in this Interim Order shall be construed to grant standing on any party in interest, including any Committee, to bring any Challenge on behalf of the Debtors' estates. The failure of any party in interest, including

any Committee, to obtain an order of this Court granting standing to bring any Challenge on behalf of the Debtors' estates prior to the expiration or termination of the Challenge Period shall not be a defense to failing to commence a Challenge prior to the Challenge Period Termination Date.  In the event of a successful Challenge, the estate shall be entitled to appropriate relief, if any, under the Bankruptcy Code and applicable law.

8.  **Carve-Out**.  Subject to the terms and conditions contained in this Paragraph 8, each of the DIP Liens, the DIP Superpriority Claims, the Prepetition Liens, the Adequate Protection Replacement Liens, and the Adequate Protection Superpriority Claims shall be subject and subordinate to payment of the Carve-Out (as defined below):

(a)  Carve-Out.  For purposes of this Interim Order, "Carve-Out" means (a) all unpaid fees required to be paid in these Cases to the clerk of the Bankruptcy Court and to The United States Trustee under 28 U.S.C. § 1930(a)(6); (b) subject to the terms and conditions of this Interim Order and the Approved Budget, the unpaid fees, costs, and disbursements of professionals retained by the Debtors in these Cases and the Debtors' ordinary course professionals (collectively, the "Debtors' Professionals") that are incurred prior to the delivery by the DIP Agent of a Carve-Out Trigger Notice (as defined below) and that are allowed pursuant to an order of the Court under sections 327, 328, 330, or 363 of the Bankruptcy Code and remain unpaid after application of any retainers being held by such professionals; (c) subject to the terms and conditions of this Interim Order and the Approved Budget, the reasonable unpaid fees, costs, and disbursements of professionals retained by the Committee in these Cases (collectively, the "Committee's Professionals") and all reasonable unpaid out-of-pocket expenses of the members of any Committee ("Committee Members") that are incurred prior to the delivery of a Carve-Out Trigger Notice and that are allowed by the Court under sections 328, 330, or

1103 of the Bankruptcy Code, in an aggregate amount (for both Committee Members and the Committee's Professionals) not to exceed $200,000 (inclusive of any retainers being held by the Committee's Professionals and the Committee Members) prior to the delivery of a Carve-Out Trigger Notice; (d) the reasonable unpaid fees, costs, and disbursements of the Debtors' Professionals that are incurred after the delivery of a Carve-Out Trigger Notice, that are allowed by the Court under sections 327, 328, 330 or 363 of the Bankruptcy Code, in an aggregate amount not to exceed $200,000 (inclusive of any unused prepetition retainers held by such professionals) (the "Debtors' Professionals Carve-Out Cap"); and (e) the reasonable fees, costs, and disbursements of the Committee Professionals and the reasonable expenses of Committee Members that are incurred at any time after the delivery of a Carve-Out Trigger Notice, that are allowed by the Court under sections 328 or 1103 of the Bankruptcy Code, in an aggregate amount (for both Committee Members and the Committee's Professionals) not to exceed $50,000 (inclusive of any retainers held by such professionals) (the "Committee Carve-Out Cap" and, together with the Debtors' Professionals Carve-Out Cap, the "Post-Default Carve-Out Cap") (clauses (a), (b), (c), (d), and (e), collectively, the "Carve-Out").  For avoidance of doubt, the Carve-Out shall also include (without double-counting of any success fee included in the Approved Budget), to the extent finally approved by the Court, any success fee due and owing to the Debtors' financial advisor, Imperial Capital, LLC ("Imperial"), set forth in its engagement letter dated August 29, 2013, provided that the DIP Agent, the Prepetition First Lien Secured Agent and the Prepetition Second Lien Secured Agent shall have the right to object to the Debtors' application to employ Imperial and any motion seeking to approve such success fee. The term "Carve-Out Trigger Notice" shall mean a written notice delivered by the DIP Agent to the Debtors' lead counsel, the United States Trustee, the Prepetition Second Lien Secured Agent,

and lead counsel to any Committee appointed in these Cases, which notice may be delivered at any time following the occurrence and during the continuation of any Termination Event. After the delivery of a Carve-Out Trigger Notice, upon the later of five (5) Business Days following (i) the liquidation or sale of any DIP Collateral and (ii) any order of the Court allowing for payment of unpaid fees, costs and disbursements of the Debtors' Professionals, the Committees' Professionals or the Committee Members that are incurred after the delivery of a Carve-Out Trigger Notice, all such allowed amounts shall be paid from the net proceeds of such DIP Collateral to the applicable Debtors' Professional, Committee Professional or Committee Member, provided, however, that in no circumstance shall the aggregate amounts paid on account of such fees, costs and disbursements incurred after the delivery of a Carve-Out Trigger Notice exceed, as applicable, the Debtors' Professionals Carve-Out Cap or the Committee Carve-Out Cap. The DIP Agent shall be entitled to establish and maintain reserves against borrowing availability under the Revolver Facility on account of the Carve-Out and fees and expenses of the Lender Professionals (as defined below) in accordance with the terms of the DIP Credit Agreement. No amounts set forth in this subparagraph (a) with respect to the Post-Default Carve-Out Cap may be modified without the prior written consent of the DIP Agent, the Prepetition First Lien Secured Agent, and the Prepetition Second Lien Secured Agent.

(b)    No Direct Obligation to Pay Professional Fees; No Waiver of Right to Object to Fees. Subject to their obligations under Paragraph 8(a) hereof, nothing in this Interim Order or otherwise shall be construed (i) to obligate the Prepetition First Lien Secured Agent, the Prepetition Second Lien Secured Agent or any other Prepetition Secured Parties in any way to pay compensation to, or to reimburse expenses of, any of the Debtors' Professionals or Committee's Professionals, or to guarantee that the Debtors have sufficient funds to pay such

compensation or reimbursement or (ii) to increase the Carve-Out if actual allowed fees and expenses of any of the Debtors' Professionals or Committee's Professionals are higher in fact than the Carve-Out Cap.  The respective Prepetition Secured Parties' liens and claims shall be subject to the Carve-Out as set forth in this Interim Order.  Nothing herein shall be construed as consent to the allowance of any professional fees or expenses of any of the Debtors, any Committee, any other official or unofficial committee in these Cases, or of any other person or entity, or shall affect the right of any DIP Secured Party or any Prepetition Secured Party to object to the allowance and payment of such fees and expenses.

        (c)    <u>Payment of Allowed Professional Fees Prior to the Termination Declaration Date</u>.  Prior to the occurrence of the Termination Declaration Date, the Debtors shall be permitted to pay, subject to this Interim Order, allowed fees of the Debtors' Professionals and the Committee's Professionals, subject to the Bankruptcy Code, the Bankruptcy Rules, the Local Rules and any interim compensation procedures order entered by this Court.  The amounts paid or incurred prior to the Carve-Out Trigger Notice shall not reduce the Carve-Out.

        9.    **Waiver of 506(c) Claims**.  Subject to the entry of the Final Order, as a further condition of the DIP Facility and any obligation of the DIP Secured Parties to make credit extensions pursuant to the DIP Loan Documents and as a condition to the respective Prepetition Secured Parties consenting to the priming set forth herein and to the use of Cash Collateral (and all such parties' consent to the payment of the Carve-Out to the extent provided herein), no costs or expenses of administration of the Cases or any Successor Cases shall be charged against or recovered from or against any or all of the Prepetition Secured Parties, the Prepetition Collateral, and the Cash Collateral pursuant to section 506(c) of the Bankruptcy Code or otherwise, without the prior written consent of the Prepetition First Lien Secured Agent or the Prepetition Second

Lien Secured Agent, as the case may be, and no such consent shall be implied from any other action, inaction, or acquiescence of any or all of the Prepetition First Lien Secured Parties and the Prepetition Second Lien Secured Parties.

10.    **After-Acquired Property**. Except as otherwise provided in this Interim Order, pursuant to section 552(a) of the Bankruptcy Code, all property acquired by the Debtors on or after the Petition Date is not, and shall not be, subject to any Lien of any person or entity resulting from any security agreement entered into by the Debtors prior to the Petition Date, except to the extent that such property constitutes proceeds of property of the Debtors that is subject to a valid, enforceable, perfected, and unavoidable Lien as of the Petition Date and not subject to subordination under the Bankruptcy Code or other provisions or principles of applicable law.

11.    **Protection of DIP Secured Parties' Rights**.

(a)    Unless the requisite DIP Secured Parties under the DIP Loan Documents shall have provided their prior written consent or all DIP Obligations have been Paid in Full, there shall not be entered in these proceedings, or in any Successor Cases, any order which authorizes any of the following: (i) the obtaining of credit or the incurring of indebtedness that is secured by a security, mortgage, or collateral interest or other Lien on all or any portion of the DIP Collateral and/or that is entitled to administrative priority status, in each case which is superior to or *pari passu* with the DIP Liens, the DIP Superpriority Claims, and the other DIP Protections granted pursuant to this Interim Order to the DIP Secured Parties; or (ii) the use of Cash Collateral for any purpose other than to Pay in Full the DIP Obligations or as otherwise permitted in the DIP Loan Documents and this Interim Order.

(b)    The Debtors (and/or their legal and financial advisors in the case of

clauses (ii) through (iv) below) will (i) maintain books, records, and accounts to the extent and as required by the DIP Loan Documents, (ii) reasonably cooperate, consult with, and provide to the DIP Secured Parties and the Prepetition Secured Parties all such information and documents as required or allowed under the DIP Loan Documents or the provisions of this Interim Order or the Prepetition Secured Loan Documents, (iii) permit representatives of each of the DIP Agent, the Prepetition First Lien Secured Agent and the Prepetition Second Lien Secured Agent such rights to visit and inspect any of the Debtors' respective properties, to examine and make abstracts or copies from any of their respective books and records, to conduct a collateral audit and analysis of their respective inventory and accounts, to tour the Debtors' business premises and other properties, and to discuss, and provide advice with respect to, their respective affairs, finances, properties, business operations, and accounts with their respective officers, employees, and independent public accountants as and to the extent provided in the DIP Loan Documents and the Prepetition Secured Loan Documents, and (iv) permit the DIP Agent, the Prepetition First Lien Secured Agent, and the Prepetition Second Lien Secured Agent and their respective representatives to consult with the Debtors' management and advisors on matters concerning the general status of the Debtors' businesses, financial condition, and operations.  Notwithstanding anything to the contrary contained herein, nothing in this Interim Order shall require the Debtors to waive any right to attorney-client, work product, or similar privilege, and nothing in this Interim Order shall require the Debtors to provide the DIP Agent, the Prepetition First Lien Secured Agent, the Prepetition Second Lien Secured Agent, or their respective financial advisors with any information subject to attorney-client privilege or consisting of attorney work product.

12.    **Proceeds of Subsequent Financing**.  Without limiting the provisions and protections of Paragraph 11 above, if at any time prior to the Payment in Full of all the DIP

Obligations (including subsequent to the confirmation of any Chapter 11 plan or plans with respect to any of the Debtors), the Debtors' estates, any trustee, any examiner with enlarged powers, or any responsible officer subsequently appointed shall obtain credit or incur debt pursuant to sections 364(b), 364(c), 364(d), or any other provision of the Bankruptcy Code in violation of the DIP Loan Documents, then all of the cash proceeds derived from such credit or debt and all Cash Collateral shall immediately be turned over to the DIP Agent until Payment in Full of the DIP Obligations.

13.   **Cash Collection**.  From and after the date of the entry of this Interim Order, all collections and proceeds of any DIP Collateral or Prepetition Collateral or services provided by any Debtor and all Cash Collateral which shall at any time come into the possession, custody, or control of any Debtor, or to which any Debtor is now or shall become entitled at any time, shall be promptly deposited in the same bank accounts into which the collections and proceeds of the Prepetition Collateral were deposited under the Prepetition Secured Loan Documents (or in such other accounts as are designated by the DIP Agent from time to time).

14.   **Disposition of DIP Collateral**.  Unless the DIP Obligations and the Prepetition First Lien Obligations are Paid in Full upon the closing of a sale or similar transaction, the Debtors shall not sell, transfer, lease, encumber, or otherwise dispose of any portion of the DIP Collateral (or enter into any binding agreement to do so) outside the ordinary course of business without the prior written consent of the requisite DIP Secured Parties under the DIP Loan Documents and the Prepetition First Lien Secured Agent (and no such consent shall be implied from any other action, inaction, or acquiescence by any DIP Secured Party or Prepetition First Lien Secured Party or any order of this Court), except as permitted in the DIP Loan Documents and/or the Prepetition First Lien Loan Documents, as applicable, and this Interim Order.

15.    **Rights and Remedies Upon Termination Event**.  Any automatic stay otherwise applicable to the DIP Secured Parties and the Prepetition First Lien Secured Parties is hereby modified, without requiring prior notice to or authorization of this Court, to the extent necessary to permit the DIP Secured Parties and/or the Prepetition First Lien Secured Parties, as applicable, to exercise the following rights and remedies upon the occurrence and during the continuance of any Termination Event (as set forth in section 2(f) of this Interim Order):

(a)    At any time after the provision of three (3) Business Days' written notice of any Termination Event (which notice period shall run concurrently with the notice period provided for in Paragraph 15(b) below as well as any cure period provided under the DIP Loan Documents) by the DIP Agent or Prepetition First Lien Secured Agent, as applicable, to the Debtors, the Committee, the Prepetition Second Lien Secured Agent, and the United States Trustee (such notice shall be referred to herein as a "Termination Declaration," and the earliest date on which a Termination Declaration is provided shall be referred to herein as the "Termination Declaration Date"), and provided such Termination Event is not cured by the Debtors during such notice period, the DIP Secured Parties and/or Prepetition First Lien Secured Parties, as applicable, shall have the right to: (i) terminate any or all of the DIP Obligations; (ii) declare the principal amount then outstanding of, and the accrued interest on, any or all of the DIP Obligations and all other amounts payable by the Debtors under the DIP Loan Documents to be forthwith due and payable, whereupon such amounts shall be immediately due and payable without presentment, demand, protest, or other formalities of any kind, all of which are hereby expressly waived by the Debtors; (iii) terminate the DIP Facility and any DIP Loan Document as to any future liability or obligation of the DIP Secured Parties, but without affecting any of the DIP Obligations or the DIP Liens securing the DIP Obligations; (iv) declare a termination,

reduction, or restriction on the ability of the Debtors to use any proceeds of the DIP Facility, DIP Collateral and/or Prepetition Collateral, including Cash Collateral (except as permitted in Paragraph 15(b) below); (v) reduce any claim to judgment; (vi) take any other action permitted by law; and/or (vii) take any action permitted to be taken by the DIP Loan Documents during the continuance of any Termination Event.

    (b)  Five (5) Business Days following a Termination Declaration Date (provided that the Debtors have not cured the existing Termination Events during such period), the DIP Secured Parties, and, upon Payment in Full of the DIP Obligations, the Prepetition First Lien Secured Parties, shall have further relief from the automatic stay to the extent necessary to foreclose on all or any portion of the DIP Collateral or Prepetition Collateral, as applicable, collect accounts receivable, and apply the proceeds thereof to the DIP Obligations and/or Prepetition First Lien Obligations, as applicable, occupy the Debtors' premises to sell or otherwise dispose of the DIP Collateral or Prepetition Collateral, as applicable, or otherwise exercise remedies against the DIP Collateral or Prepetition Collateral, as applicable, permitted by applicable nonbankruptcy law.  During the five (5) Business Day period after a Termination Declaration Date, the Debtors, the DIP Agent, the Prepetition First Lien Secured Agent, the Prepetition Second Lien Secured Agent, and any Committee shall be entitled to an emergency hearing before the Court for the sole purpose of contesting whether a Termination Event has occurred and section 105 of the Bankruptcy Code may not be invoked by the Debtors, the Committee, or any other party in interest in an effort to restrict or preclude any DIP Secured Party from exercising any rights or remedies set forth in this Interim Order or the DIP Loan Documents.  Unless during such period the Court determines that a Termination Event has not occurred and/or is not continuing, the automatic stay, as to the DIP Secured Parties (and, upon

Payment in Full of the DIP Obligations, as to the Prepetition First Lien Secured Parties), shall automatically terminate at the end of such five (5) Business Day period, without further notice or order.  During such five (5) Business Day period, which period shall run concurrently with any other notice or cure period provided for in this Interim Order or the DIP Loan Documents, the Debtors shall not be permitted to use Cash Collateral or any amounts under the DIP Credit Facility except to pay payroll and other expenses critical to avoid immediate and irreparable harm to the Debtors' business and assets (and in no event in violation of the Budget Covenants). For the avoidance of doubt, (i) the Prepetition First Lien Secured Parties shall also have the benefit of the automatic stay relief and other provisions set forth in this Paragraph 15 upon the Payment in Full of the DIP Obligations with respect to any Termination Event, and (ii) the Prepetition Second Lien Secured Parties shall also have the benefit of the automatic stay relief and other provisions set forth in this Paragraph 15 upon the Payment in Full of  the DIP Obligations and the Prepetition First Lien Obligations.

(c)    All proceeds realized in connection with the exercise of the rights and remedies of the DIP Secured Parties or the Prepetition Secured Parties, as applicable, shall be turned over to the DIP Agent for application to the other DIP Obligations under, and in accordance with, the provisions of the DIP Loan Documents until Payment in Full of the DIP Obligations; provided, that in the event of the liquidation of the Debtors' estates after the occurrence and during the continuance of a Termination Event, the Carve-Out shall be funded into a segregated account exclusively (i) first, from proceeds of any unencumbered assets of the Debtors, and (ii) then from Cash Collateral received by the DIP Agent subsequent to the date of termination of the DIP Obligations and prior to the distribution of any such Cash Collateral to any other parties in interest.

(d)     Subject to entry of the Final Order, and notwithstanding anything contained herein to the contrary, and without limiting any other rights or remedies of the DIP Agent or the other DIP Secured Parties contained in this Interim Order or the DIP Loan Documents, or otherwise available at law or in equity, and subject to the terms of the DIP Loan Documents, upon five (5) Business Days' written notice to the Debtors and any landlord, lienholder, licensor, or other third party owner of any leased or licensed premises or intellectual property that a Termination Event has occurred and is continuing, the DIP Agent (i) may, unless otherwise provided in any separate agreement by and between the applicable landlord or licensor and the DIP Agent (the terms of which shall be reasonably acceptable to the parties thereto), enter upon any leased or licensed premises of the Debtors for the purpose of exercising any remedy with respect to Collateral located thereon and (ii) shall be entitled to all of the Debtors' rights and privileges as lessee or licensee under the applicable license and to use any and all trademarks, trade names, copyrights, licenses, patents, or any other similar assets of the Debtors, which are owned by or subject to a Lien of any third party and which are used by Debtors in their businesses, in either the case of subparagraph (i) or (ii) of this Paragraph 15(e) without interference from lienholders or licensors thereunder, subject to such lienholders' or licensors' rights under applicable law; provided, however, that the DIP Agent, on behalf of the DIP Secured Parties, shall pay only rent and additional rent, fees, royalties, or other obligations of the Debtors that first arise after the written notice referenced above from the DIP Agent and that accrue during the period of such occupancy or use by such DIP Agent calculated on a *per diem* basis.  Nothing herein shall require the Debtors, the DIP Agent, or the other DIP Secured Parties to assume any lease or license under section 365(a) of the Bankruptcy Code as a precondition to the rights afforded to the DIP Agent and the other DIP Secured Parties in this Paragraph 15(e).

(e)     The automatic stay imposed under section 362(a) of the Bankruptcy Code is hereby modified pursuant to the terms of this Interim Order and the DIP Loan Documents as necessary to (i) permit the Debtors to grant the Adequate Protection Replacement Liens and the DIP Liens and to incur all liabilities and obligations to the Prepetition Secured Parties and the DIP Secured Parties under the DIP Loan Documents, the DIP Facility, and this Interim Order, (ii) authorize the DIP Secured Parties and the Prepetition Secured Parties to retain and apply payments hereunder, and (iii) otherwise to the extent necessary to implement and effectuate the provisions of this Interim Order.

(f)     Notwithstanding anything to the contrary in this Interim Order or the DIP Documents, upon a Termination Event, the rights of the Prepetition Secured Parties, the DIP Agent, or the DIP Lenders to enter onto the Debtors' leased premises shall be limited to (i) any such rights agreed to in writing by the applicable landlord in favor of the respective Prepetition Secured Parties and/or DIP Secured Parties or their designees (including, without limitation, in the governing lease agreement itself or in any landlord waiver or similar agreement), (ii) any rights that the respective Prepetition Secured Parties and/or DIP Secured Parties have under applicable non-bankruptcy law, if any, or (iii) such rights as may be granted by the Court on a separate motion with notice to the applicable landlords of the leased premises and an opportunity for such landlords to respond and be heard.

16.     **Restriction on Use of Proceeds**.  Notwithstanding anything herein to the contrary (including, without limitation, in Paragraph 8 hereof), no loans and/or proceeds from the DIP Facility, DIP Collateral, Cash Collateral (including any prepetition retainer held by any professionals for the below-referenced parties), Prepetition Collateral, or any portion of the Carve-Out may be used by (a) any Debtor, any Committee or trustee or other estate

representative appointed in the Cases or any Successor Cases, or any other person, party, or entity to (or to pay any professional fees and disbursements incurred in connection therewith) investigate or prosecute any Challenge or any other litigation in connection with the value of the Prepetition Collateral or the DIP Collateral; and (b) any of the Debtors, any Committee, and any trustee or other estate representative appointed in the Cases or any Successor Cases, or any other person, party, or entity to (or to pay any professional fees and disbursements incurred in connection therewith): (i) request authorization to obtain postpetition loans or other financial accommodations pursuant to Bankruptcy Code section 364(c) or (d), or otherwise, other than from the DIP Secured Parties; (ii) investigate (except as set forth below), assert, join, commence, support, or prosecute any action for any claim, counter-claim, action, proceeding, application, motion, objection, defense, or other contested matter seeking any order, judgment, determination, or similar relief against, or adverse to the interests of, in any capacity, any or all of the DIP Secured Parties, the Prepetition Secured Parties, and their respective officers, directors, employees, agents, attorneys, affiliates, assigns, or successors, with respect to any transaction, occurrence, omission, action, or other matter (including formal discovery proceedings in anticipation thereof), including, without limitation, (A) any Challenges and any Avoidance Actions or other actions arising under chapter 5 of the Bankruptcy Code; (B) any action with respect to the validity, enforceability, priority, and extent of the DIP Obligations and/or the respective Prepetition Secured Obligations, or the validity, extent, and priority of the DIP Liens, the Prepetition Liens, or the Adequate Protection Replacement Liens; (C) any action seeking to invalidate, set aside, avoid, or subordinate, in whole or in part, the DIP Liens, the other DIP Protections, the Prepetition Liens, the Adequate Protection Replacement Liens, or the other Prepetition First Lien Secured Parties' Adequate Protection or Prepetition Second Lien

Secured Parties' Adequate Protection; (D) except to contest in good faith the occurrence or continuance of any Termination Event as permitted in Paragraph 15, any action seeking, or having the effect of, preventing, hindering, or otherwise delaying any or all of the DIP Secured Parties' (and, after the Payment in Full of the DIP Obligations, the Prepetition First Lien Secured Parties', and after the Payment in Full of the Prepetition First Lien Obligations, the Prepetition Second Lien Secured Parties') assertion, enforcement, or realization on the Cash Collateral or the DIP Collateral in accordance with the DIP Loan Documents or the Prepetition Secured Loan Documents, as applicable, or this Interim Order; and/or (E) any action seeking to modify any of the rights, remedies, priorities, privileges, protections, and benefits granted to any or all of the DIP Secured Parties and the Prepetition First Lien Secured Parties hereunder or under the DIP Loan Documents or the Prepetition Secured Loan Documents, as applicable; provided, however, up to $50,000 in the aggregate of the Carve-Out, any DIP Collateral, any Prepetition Collateral, any Cash Collateral or proceeds of the DIP Facility may be used by the Committee (to the extent such committee is appointed) to investigate (but not prosecute) the extent, validity, and priority of the Prepetition Secured Obligations, the Prepetition Liens, or any other claims against the Prepetition Secured Parties so long as such investigation occurs within the Challenge Period; (iii) pay any fees or similar amounts to any person (other than the Prepetition Secured Parties) who has proposed or may propose to purchase interests in any of the Debtors without the prior written consent of the DIP Agent; or (iv) use or seek to use Cash Collateral or sell or otherwise dispose of DIP Collateral, unless otherwise permitted hereby, without the consent of the DIP Secured Parties or the Prepetition Secured Parties, as applicable.

17. **Proofs of Claim**.  Upon entry of the Final Order, the Prepetition First Lien Secured Parties and the Prepetition Second Lien Secured Parties will not be required to file

proofs of claim in any of the Cases or Successor Cases for any claim allowed herein. The Debtors' Stipulations shall be deemed to constitute a timely filed proof of claim for the Prepetition First Lien Secured Parties and the Prepetition Second Lien Secured Parties. Notwithstanding any order entered by the Court in relation to the establishment of a bar date in any of the Cases or Successor Cases to the contrary, the Prepetition First Lien Secured Agent for the benefit of itself and the other Prepetition First Lien Secured Parties, and the Prepetition Second Lien Secured Agent for the benefit of itself and the Prepetition Second Lien Secured Lenders, are hereby authorized and entitled, in their sole discretion, but not required, to file (and amend and/or supplement, as they see fit) a proof of claim and/or aggregate proofs of claim in each of the Cases or Successor Cases for any claim allowed herein.

18. **Preservation of Rights Granted Under the Interim Order**.

(a)    No Non-Consensual Modification or Extension of Interim Order. The Debtors irrevocably waive any right to seek any amendment, modification, or extension of this Interim Order without the prior written consent of the DIP Agent, Requisite DIP Lenders, the Prepetition First Lien Secured Agent, and the Prepetition Second Lien Secured Agent (solely to the extent the interests of the Prepetition Second Lien Secured Parties are adversely affected by such amendment, modification or extension) and no such consent shall be implied by any other action, inaction, or acquiescence of the DIP Secured Parties or any of the Prepetition Secured Parties. In the event any or all of the provisions of this Interim Order are hereafter modified, amended, or vacated by a subsequent order of this Court or any other court, such modification, amendment, or vacatur shall not affect the validity, perfection, priority, allowability, enforceability, or non-avoidability of any advances, payments, or use of cash whether previously or hereunder, or lien, claim, or priority authorized or created hereby. Based on the findings set

forth in this Interim Order and in accordance with section 364(e) of the Bankruptcy Code, which is applicable to the DIP Facility contemplated by this Interim Order, in the event any or all of the provisions of this Interim Order are hereafter reversed, modified, vacated, or stayed by a subsequent order of this Court or any other court, the DIP Secured Parties and the Prepetition Secured Parties shall be entitled to the protections provided in section 364(e) of the Bankruptcy Code, and no such reversal, modification, vacatur, or stay shall affect (i) the validity, priority, or enforceability of any DIP Protections and the Prepetition Secured Parties' Adequate Protection granted or incurred prior to the actual receipt of written notice by the DIP Agent, the Prepetition First Lien Secured Agent, or the Prepetition Second Lien Secured Agent, as the case may be, of the effective date of such reversal, modification, vacatur, or stay or (ii) the validity or enforceability of any lien or priority authorized or created hereby or pursuant to the DIP Loan Documents with respect to any DIP Obligations and the Prepetition Secured Parties' Adequate Protection. Notwithstanding any such reversal, modification, vacatur, or stay, any use of Cash Collateral or any DIP Obligations or Prepetition Secured Parties' Adequate Protection incurred or granted by the Debtors prior to the actual receipt of written notice by the DIP Agent, the Prepetition First Lien Secured Agent, or the Prepetition Second Lien Secured Agent, as applicable, of the effective date of such reversal, modification, vacatur, or stay shall be governed in all respects by the original provisions of this Interim Order, and the DIP Secured Parties and the Prepetition Secured Parties shall be entitled to all of the DIP Protections and Prepetition Secured Parties' Adequate Protection, as the case may be, and all other rights, remedies, liens, priorities, privileges, protections, and benefits granted in section 364(e) of the Bankruptcy Code, this Interim Order, and pursuant to the DIP Loan Documents with respect to all uses of Cash Collateral and all DIP Obligations and Prepetition Secured Parties' Adequate Protection.

(b)    Dismissal.  If any order dismissing any of the Cases under section 1112 of the Bankruptcy Code or otherwise is at any time entered, such order shall provide (in accordance with sections 105 and 349 of the Bankruptcy Code), to the fullest extent permitted by law, that (i) the DIP Protections and the Prepetition Secured Parties' Adequate Protection shall continue in full force and effect and shall maintain their priorities as provided in this Interim Order until all DIP Obligations have been Paid in Full, the Prepetition First Lien Obligations have been Paid in Full, and the Prepetition Second Lien Obligations have been Paid in Full in cash or otherwise satisfied in full (and that all DIP Protections and the Prepetition Secured Parties' Adequate Protection shall, notwithstanding such dismissal, remain binding on all parties in interest), and (ii) this Court shall retain jurisdiction, notwithstanding such dismissal, for the purposes of enforcing such DIP Protections and the Prepetition Secured Parties' Adequate Protection.

(c)    Survival of Interim Order.  The provisions of this Interim Order and the DIP Loan Documents, any actions taken pursuant hereto or thereto, and all of the DIP Protections, the Prepetition Secured Parties' Adequate Protection, and all other rights, remedies, liens, priorities, privileges, protections, and benefits granted to any or all of the DIP Secured Parties and the Prepetition Secured Parties shall survive, and shall not be modified, impaired, or discharged by, the entry of any order confirming any plan of reorganization in any Case, converting any Case to a case under chapter 7, dismissing any of the Cases, withdrawing of the reference of any of the Cases or any Successor Cases or providing for abstention from handling or retaining of jurisdiction of any of the Cases in this Court, or terminating the joint administration of these Cases or by any other act or omission.  The terms and provisions of this Interim Order, including all of the DIP Protections, the Prepetition Secured Parties' Adequate Protection, and all other rights, remedies, liens, priorities, privileges, protections, and benefits

granted to any or all of the DIP Secured Parties and the Prepetition Secured Parties, shall continue in full force and effect notwithstanding the entry of any such order, and such DIP Protections and Prepetition Secured Parties' Adequate Protection shall continue in these proceedings and in any Successor Cases, and shall maintain their respective priorities as provided by this Interim Order. Subject to the provisions of this Interim Order and the DIP Loan Documents that permit the treatment of the DIP Obligations under the DIP Facility pursuant to a Chapter 11 plan with respect to any of the Debtors, the DIP Obligations shall not be discharged by the entry of an order confirming a Chapter 11 plan, the Debtors having waived such discharge pursuant to section 1141(d)(4) of the Bankruptcy Code.

19. **Insurance Policies**. Upon entry of this Interim Order, the DIP Secured Parties and the Prepetition Secured Parties shall be, and shall be deemed to be, without any further action or notice, named as additional insureds and loss payees on each insurance policy maintained by the Debtors which in any way relates to the Collateral, subject in all respects to the Intercreditor Agreement and the relative priorities set forth therein and in this Interim Order.

20. **Other Rights and Obligations**.

(a) Expenses. As and to the extent provided in the DIP Loan Documents, and to the extent set forth in the Approved Budget, the applicable Debtors will pay all reasonable expenses incurred by the DIP Agent and DIP Lenders (including, without limitation, the reasonable fees and disbursements of all counsel for the DIP Agent and DIP Lenders and any internal or third-party appraisers, consultants, and auditors advising the DIP Agent) in connection with the preparation, execution, delivery, and administration of the DIP Loan Documents, this Interim Order, the Final Order, and any other agreements, instruments, pleadings, or other documents prepared or reviewed in connection with any of the foregoing,

whether or not any or all of the transactions contemplated hereby or by the DIP Loan Documents are consummated; provided that to the extent the amounts set forth in this Paragraph exceed the amounts included in the Approved Budget (on a cumulative basis), such excess shall be paid immediately upon the DIP Revolving Termination Date (as defined in the DIP Credit Agreement).

        (b)    Notice of Professional Fees.  Professionals for the DIP Secured Parties, the Prepetition First Lien Secured Parties, and the Prepetition Second Lien Secured Parties (collectively, the "Lender Professionals") shall not be required to comply with the United States Trustee fee rules or guidelines or submit invoices to the Court, United States Trustee, any Committee or any other party-in-interest absent further court order.  Copies of summary invoices submitted to the Debtors by such Lender Professionals shall be forwarded by the Debtors to the United States Trustee, counsel for any Committee, and such other parties as the Court may direct.  The summary invoices shall be sufficiently detailed to enable a determination as to the reasonableness of such fees and expenses; provided, however, that such summary invoices may be redacted to the extent necessary to delete any information subject to the attorney-client privilege, any information constituting attorney work product, or any other confidential information, and the provision of such summary invoices shall not constitute any waiver of the attorney-client privilege or of any benefits of the attorney work product doctrine.  If the Debtors, United States Trustee, or counsel for any Committee object to the reasonableness of the fees and expenses of any of the Lender Professionals and cannot resolve such objection, the Debtors, United States Trustee, or the Committee, as the case may be, shall file with the Court and serve on such Lender Professionals an objection (the "Fee Objection") limited to the issue of the reasonableness of such fees and expenses within ten days of receipt of such invoices.   Any

hearing on an objection to payment of any fees, costs, and expenses set forth in a professional fee invoice shall be limited to the reasonableness or necessity of the particular items or categories of the fees, costs, and expenses which are the subject of such objection. The Debtors shall timely pay in accordance with the terms and conditions of this Interim Order the undisputed fees, costs, and expenses reflected on any invoice to which a Fee Objection has been timely filed. The Debtors shall indemnify the DIP Agent and the DIP Lenders (and other applicable parties) to the extent set forth in the DIP Loan Documents, including, without limitation, as provided in Section 9.6 of the DIP Credit Agreement. All such unpaid fees, costs, expenses, charges, and indemnities of the DIP Agent that have not been disallowed by this Court on the basis of an objection filed by the United States Trustee or the Committee (or any subsequent trustee of the Debtors' estates) in accordance with the terms hereof shall constitute DIP Obligations and shall be secured by the DIP Collateral as specified in this Interim Order. Any and all fees, commissions, costs, and expenses paid prior to the Petition Date by any Debtor to the DIP Agent or the DIP Lenders in connection with or with respect to the DIP Facility, the DIP Credit Agreement, or the other DIP Loan Documents are hereby approved in full and non-refundable.

(c)    Binding Effect. Subject to Paragraph 7 above, the provisions of this Interim Order, including all findings herein, and the DIP Loan Documents shall be binding upon all parties in interest in these Cases, including, without limitation, the DIP Secured Parties, the Prepetition Secured Parties, any Committee, and the Debtors and their respective successors and assigns (including any chapter 7 or chapter 11 trustee hereinafter appointed or elected for the estate of any of the Debtors, an examiner appointed pursuant to section 1104 of the Bankruptcy Code, or any other fiduciary or responsible person appointed as a legal representative of any of the Debtors or with respect to the property of the estate of any of the Debtors), whether in any of

the Cases, in any Successor Cases, or upon dismissal of any such Case or Successor Case; provided, however, that the DIP Secured Parties and the Prepetition Secured Parties shall have no obligation to permit the use of Cash Collateral or to extend any financing to any chapter 7 or chapter 11 trustee or other responsible person appointed for the estates of the Debtors in any Case or Successor Case.

(d)    No Waiver.  Neither the failure of the Prepetition Secured Parties to seek relief or otherwise exercise their rights and remedies under this Interim Order, the Prepetition Secured Loan Documents, or otherwise (or any delay in seeking or exercising same), nor the failure of the DIP Secured Parties to seek relief or otherwise exercise their respective rights and remedies under this Interim Order, the DIP Loan Documents, or otherwise (or any delay in seeking or exercising same), shall constitute a waiver of any of such parties' rights hereunder, thereunder, or otherwise.  Nothing contained in this Interim Order (including, without limitation, the authorization of the use of any Cash Collateral) shall impair or modify any rights, claims, or defenses available in law or equity to any Prepetition Secured Party or any DIP Secured Party, including, without limitation, rights of a party to a swap agreement, securities contract, commodity contract, forward contract, or repurchase agreement with a Debtor to assert rights of setoff or other rights with respect thereto as permitted by law (or the right of a Debtor to contest such assertion).  Except as prohibited by this Interim Order, the entry of this Interim Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, or otherwise impair, the ability of the Prepetition Secured Parties or the DIP Secured Parties under the Bankruptcy Code or under non-bankruptcy law to (i) request conversion of the Cases to cases under chapter 7, dismissal of the Cases, or the appointment of a trustee in the Cases, (ii) propose, subject to the provisions of section 1121 of the Bankruptcy Code, any Chapter 11 plan or plans

71

with respect to any of the Debtors, or (iii) except as expressly provided herein, exercise any of the rights, claims, or privileges (whether legal, equitable, or otherwise) of the DIP Secured Parties or the Prepetition Secured Parties, respectively.  Except to the extent otherwise expressly provided in this Interim Order, neither the commencement of the Cases nor the entry of this Interim Order shall limit or otherwise modify the rights and remedies of the Prepetition Secured Parties with respect to non-Debtor entities or their respective assets, whether such rights and remedies arise under the Prepetition Secured Loan Documents, applicable law, or equity. Nothing in this Interim Order or in any DIP Loan Document shall in any way modify the terms of the Intercreditor Agreement or the rights, and obligations of the parties thereunder.  The Intercreditor Agreement shall continue to apply to the Prepetition First Lien Obligations converted to DIP Obligations pursuant to the terms hereof.

(e)    No Third Party Rights.    Except as explicitly provided for herein, this Interim Order does not create any rights for the benefit of any third party, creditor, equity holder, or any direct, indirect, or incidental beneficiary.  In determining to make any loan (whether under the DIP Credit Agreement or otherwise) or to permit the use of Cash Collateral or in exercising any rights or remedies as and when permitted pursuant to this Interim Order or the DIP Loan Documents, the DIP Secured Parties and the Prepetition Secured Parties shall not (i) be deemed to be in control of the operations of the Debtors or (ii) owe any fiduciary duty to the Debtors, their respective creditors, shareholders, or estates.

(f)    No Marshaling.    Neither the DIP Secured Parties nor the Prepetition Secured Parties shall be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the DIP Collateral or the Prepetition Collateral, as applicable.

(g)    Amendments.    The Debtors are authorized and empowered, without

further notice and hearing or approval of this Court, to amend, modify, supplement, or waive any provision of the DIP Loan Documents in accordance with the provisions thereof, in each case unless such amendment, modification, supplement, or waiver (i) increases the interest rate (other than as a result of the imposition of the default rate), (ii) increases the aggregate commitments of all of the DIP Lenders in respect of the DIP Facility, (iii) changes the stated maturity of the DIP Obligations more than 30 days beyond March 31, 2014, or (iv) adds or amends (in any respect unfavorable to the Debtors) any Termination Event.  No waiver, modification, or amendment of any of the provisions hereof shall be effective unless set forth in writing, signed by or on behalf of all the Debtors and the DIP Agent (after having obtained the approval of Requisite DIP Lenders) and, except as provided herein, approved by this Court.  Notwithstanding the foregoing, no waiver, modification or amendment of any of the provisions of this Interim Order or the DIP Loan Documents that would directly and adversely affect the rights or interests of the Prepetition First Lien Secured Parties or the Prepetition Second Lien Secured Parties, as applicable, shall be effective unless also consented to in writing by the adversely affected Prepetition First Lien Secured Agent (on behalf of and after obtaining the approval of the applicable Prepetition First Lien Secured Parties as required under the Prepetition First Lien Secured Credit Agreement) and/or the Prepetition Second Lien Secured Agent (on behalf of the Prepetition Second Lien Secured Parties), as applicable; provided, however, that in no event shall any modification of the respective Sale Process Deadlines by ten (10) business days or less constitute an adverse effect on the Prepetition Second Lien Secured Parties giving rise to a consent right of the Prepetition Second Lien Secured Parties under this subparagraph (g).

        (h)    Inconsistency.  In the event of any inconsistency between the terms and conditions of the DIP Loan Documents and of this Interim Order, the provisions of this Interim

Order shall govern and control.

(i)     Enforceability.  This Interim Order shall constitute findings of fact and conclusions of law pursuant to the Bankruptcy Rule 7052 and shall take effect and be fully enforceable *nunc pro tunc* to the Petition Date immediately upon execution hereof. Notwithstanding Bankruptcy Rules 4001(a)(3), 6004(h), 6006(d), 7062 or 9024 or any other Bankruptcy Rule, or Rule 62(a) of the Federal Rules of Civil Procedure, this Interim Order shall be immediately effective and enforceable upon its entry, and there shall be no stay of execution or effectiveness of this Interim Order.

(j)     Reservation of Rights.  Nothing in this Interim Order shall be deemed to constitute the consent of the DIP Secured Parties, the Prepetition First Lien Secured Parties, or the Prepetition Second Lien Secured Parties, and each of the foregoing expressly reserve the right to object, to entry of any Order of the Bankruptcy Court that provides for the sale of all or substantially all of the assets of the Debtors to any party unless, in connection and concurrently with any such event, the proceeds of such sale are or will be sufficient to Pay in Full the DIP Obligations, the Prepetition First Lien Obligations, the Prepetition First Lien Secured Parties' Adequate Protection, the Prepetition Second Lien Obligations and the Prepetition Second Lien Secured Parties' Adequate Protection, and all of the foregoing are Paid in Full on the closing date of such sale.

(k)     Headings.  Paragraph headings used herein are for convenience only and are not to affect the construction of, or to be taken into consideration in, interpreting this Interim Order.

21.     **Final Hearing**

(a)     The Final Hearing to consider entry of the Final Order and final approval

of the DIP Facility is scheduled for _January 7_ , 2014 at _12:00 p.m._ (prevailing

Eastern time) at the United States Bankruptcy Court for the District of Delaware.  The proposed

Final Order shall be substantially the same as the Interim Order except that those provisions in

the Interim Order that are subject to the entry of the Final Order shall be included in the Final

Order without such qualification.  If no objections to the relief sought in the Final Hearing are

filed and served in accordance with this Interim Order, no Final Hearing may be held, and a

separate Final Order may be presented by the Debtors and entered by this Court.

(b)      Final Hearing Notice.  Within two (2) business days of the entry of this

Order, the Debtors shall serve, by United States mail, first-class postage prepaid, (such service

constituting adequate notice of the Final Hearing) (i) notice of the entry of this Interim Order and

of the Final Hearing (the "Final Hearing Notice") and (ii) a copy of this Interim Order, on the

parties having been given notice of the Interim Hearing and to any other party that has filed a

request for notices with this Court and to any Committee after the same has been appointed, or

Committee counsel, if the same shall have been appointed.  The Final Hearing Notice shall state

that any party in interest objecting to the entry of the proposed Final Order shall file written

objections with the Clerk of the Bankruptcy Court no later than _December 30,_

_2013_ at _4:00 p.m_ (prevailing Eastern time) (the "Objection Deadline"), which objections

shall be served so that the same are received on or before such date by:  (a) counsel for the

Debtors, Olshan Frome Wolosky LLP, Park Avenue Tower, 65 East 55th Street New York, NY

10022, Attn: Adam Friedman, and Young Conaway Stargatt & Taylor, LLP, 1000 North King

Street, Wilmington, DE 19801, Attn: Robert Brady; (b) counsel for the DIP Agent and the

Prepetition First Lien Secured Agent, Latham & Watkins LLP, 233 S. Wacker Drive, Suite 5800,

Chicago, IL 60606, Attn: Peter P. Knight, peter.knight@lw.com, and James Ktsanes,

james.ktsanes@lw.com, and Reed Smith LLP, 1201 Market Street, Suite 1500, Wilmington, Delaware 19801, Attn: Kurt Gwynne; (c) counsel to any Committee; (d) counsel to the Prepetition Secured Second Lien Secured Agent, Klee, Tuchin, Bogdanoff & Stern LLP, 1999 Avenue of the Stars, 39th Floor, Los Angeles, CA 90067, Attn: Michael L. Tuchin, Esq. and David A. Fidler, Esq.; (e) Landis, Rath & Cobb, 919 Market Street, Suite 1800, Wilmington, Delaware 19801, Attn: Adam G. Landis; and (f) the Office of the United States Trustee for the District of Delaware, and such objections shall be filed with the Clerk of the United States Bankruptcy Court for the District of Delaware, in each case to allow actual receipt of the foregoing no later than the Objection Deadline.

22.    **Retention of Jurisdiction**.  The Bankruptcy Court has and will retain jurisdiction to enforce this Interim Order according to its terms.

Dated:  December 17, 2013
        Wilmington, Delaware

_____
KEVIN GROSS
CHIEF UNITED STATES BANKRUPTCY JUDGE